# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA MIDDLE DIVISION

**Plaintiff (#01) JENNIFER CATRICE**    *
**HILL, on behalf of minor AF,** *

    *

**Plaintiff (#02) SLADE MILLER,**    *
**on behalf of minor AKCM,**    *

    *

**Plaintiffs (#03 & 04) WESLEY BOLTON** *
**GARMON on behalf of minors C.G.**    *
**& L.G.,**    *

    *

**Plaintiffs (#05, 06, 07, 08) SARAH F.**    *
**BAILEY, on behalf of minors J.F.B.,**    *
**J.P.B., W.C.B. & J.C.B.**    *

    *

**State Class Claimant Users numbered**    *
**Nine (9) up to Claimant User Two**    *
**Million One Hundred Sixty Four**    *
**Thousand Seven Hundred Forty**    *
**(2,164,740)[1], &**    *

    *

**National Class Claimant Users numbered** *
**Two Million One Hundred Sixty Four**    *
**Thousand Forty One (2,164,741)**    *
**up to Two Hundred Eighty Five**    *
**Million Four Hundred Sixty Thousand**    *
**Six Hundred Sixty Seven (285,460,667)[2],** *

    *

**Global Class Claimant Users numbered**    *
**Two Hundred Eighty Five Million Four**    *
**Hundred Sixty Thousand Six Hundred**    *
**Sixty Eight (285,460,668) up to One** *

---

[1] https://www.internetworldstats.com/unitedstates.htm#AL - Reported Facebook users in 2018 for the State of Alabama.

[2] https://www.statista.com/statistics/408971/number-of-us-facebook-users/ - Reported Facebook users in 2018 for the United States of America.

**Billion Claimant Users is reserved,**          *
                                                  *
**PLAINTIFFS,**                                   *
                                                  *
                              **v.**              *          **CIVIL ACTION NUMBER:**
                                                  *
                                                  *
**META PLATFORMS, INC. formerly**                 *
**Doing Business As FACEBOOK, INC.,**             *
                                                  *
**MARK ELLIOT ZUCKERBERG,**                       *
**Agent of META & STARBELT, LLC,**                *
                                                  *
**STARBELT, LLC,**                                *
                                                  *
**DEFENDANTS.**                                   *

---

## PLAINTIFFS' CIVIL COMPLAINT COMPLAINT

---

     Comes now through this short and plain statement of facts, the Plaintiffs: Plaintiff One (#01) Jennifer Catrice Hill on behalf of A.F. a ten (10) year old minor, Plaintiff Two (#02) Slade Miller on behalf of A.K.C.M. a six (6) year old minor, Plaintiff Three (#03) Wesley Bolton Garmon on behalf of L.C.G. a fifteen (15) year old minor, Plaintiff Five (#04) Wesley Bolton Garmon on behalf of L.K.G. a seventeen (17) year old minor, Plaintiff Five (#05) Sarah F. Bailey on behalf of J.F.B. (14) year old minor, Plaintiff Six (#06) Sarah F. Bailey on behalf of J.P.B. (13) year old minor, Plaintiff Seven (#07) Sarah F. Bailey on behalf of W.C.B. (10) year old minor, Plaintiff Eight (#08) Sarah F. Bailey on behalf of J.C.B. (6) year old minor and similarly situated minors, through Claimant User Two Million One Hundred Sixty-Four Thousand Seven Hundred Forty (2,164,740)[3] representing potential minors depicted in users accounts registered and unregistered users of the Platform in the State of Alabama, the National Class of Users numbered potentially through Two Hundred Eighty-Five Million Four Hundred Sixty Thousand Six Hundred Sixty-Seven (285,460,667) Individuals representing potential minors with

---

[3] https://www.internetworldstats.com/unitedstates.htm#AL

claims as set out herein depicted in users accounts registered and unregistered users of the Platform in the United States and do plead these claims through the undersigned Attorneys, and do hereby seek damages, both monetary & equitable damages. Global Class Claimant Users numbered Two Hundred Eighty Five Million Four Hundred Sixty Thousand Six Hundred Sixty Eight (285,460,668) up to One Billion Claimant Users is reserved given storage of the minors images, data and the like for the global platform is purported to be in this Honorable Court's jurisdiction.

Plaintiffs and on behalf of all others similarly situated, by and through their undersigned Counsel, bring this class action complaint seeking monetary and injunctive relief against Defendant Meta Platforms, Inc. previously doing business as Facebook, Inc., Defendant Starbelt, LLC, and Defendant Mark Elliot Zuckerberg. Plaintiffs allege the following upon information and belief based on the investigation of counsel, to include biometric surveillance and harvesting of minors images, and upon which the Plaintiffs have personal knowledge as alleged herein.

## <u>PARTIES</u>

1.    Plaintiff Jennifer Catrice Hill, is an individual over the age of nineteen (19) and a resident of Etowah County, Alabama, and of sound mind. Plaintiff One (#01) Jennifer Catrice Hill files on behalf of A.F. a ten (10) year old minor, is an individual over the age of nineteen (19) and a resident of Jefferson County, Alabama, and of sound mind.

2.    Plaintiff Slade Miller, is an individual over the age of nineteen (19) and a resident of Etowah County, Alabama, and of sound mind. Plaintiff Two (#02) B. Slade Miller files on behalf of AKCM a six (6) year old minor.

3.    Plaintiff Wesley Bolton Garmon , is an individual over the age of nineteen (19) and a resident of Etowah County, Alabama, and of sound mind. Plaintiff Three (#03) Wesley Bolton Garmon files on behalf of L.C.G. a year  seventeen (17) year old minor, and Plaintiff Four (#04) Wesley Bolton Garmon files on behalf of L.K.G. a fifteen (15) old minor.

4.    Plaintiff, Sarah F. Bailey, is an adult resident of Jefferson County, Alabama who is of sound mind.  Plaintiff Five (5) Sarah F. Bailey files on behalf of J.F.B. a

fourteen year (14) year old minor; Plaintiff Six (6) Sarah F. Bailey files on behalf of J.P.B. a thirteen (13) year old minor; Plaintiff Seven (7) Sarah F. Bailey files on behalf of W.C.B. a ten (10) year old minor; and Plaintiff Eight (8) Sarah F. Bailey files on behalf of J.C.B. a six (6) year old minor.

5.     State Class Plaintiffs Claimant User numbered nine (9) through Claimant User numbered two million one hundred sixty-four thousand seven hundred forty (2,164,740)[4] represent those individuals who are similarly situated being Facebook users in the proposed class who were damaged and otherwise experienced antitrust violations as set out herein.

6.     National Class Plaintiffs Claimant User numbered two million one hundred sixty-four thousand seven hundred forty one (2,164,741) through Claimant User Two Hundred Eighty Million Four Hundred Sixty Thousand Six Hundred Sixty-Seven (285,460,667) are those individuals on behalf of minors within any of the federally recognized states of the union across the United States of America who are similarly situated[5] being Facebook users in the proposed national class who were damaged and otherwise experienced antitrust violations as set out herein.

7.     GLOBAL CLASS RESERVATION…

8.     Defendant Meta Platforms, Inc. formerly doing business as Facebook, Inc. is a publicly-traded Delaware corporation with its principal place of business located at 1 Hacker Way, Menlo Park, California 94025. Defendant Meta Platform[6], Inc. is believed to be a publicly-traded Delaware corporation as it was "announced" by Defendant Facebook, Inc. via Defendant Zuckerberg that the new operating name for Defendant Facebook is "Meta Platforms, Inc." albeit at the time of notice the California Secretary of State[7] has no filings for such entity.

---

[4] https://www.internetworldstats.com/unitedstates.htm#AL
[5] California and Illinois minors may be precluded from a national class by collateral estoppel.
[6] Meta Platforms, Inc.,(trade name Meta; formerly Facebook, Inc.), is an American multinational technology conglomerate holding company based in Menlo Park, California. It is the parent organization of Facebook, Instagram, and WhatsApp, among other subsidiaries. It is one of the world's most valuable companies and is considered one of the Big Tech companies in U.S. information technology, alongside Amazon, Alphabet Inc. (parent of Google), Apple, and Microsoft. The company generates a substantial share of its revenue from the sale of advertisement placements to marketers. https://en.wikipedia.org/wiki/Meta_Platforms
[7] Business entity search was conducted by the undersigned utilizing the California Secretary of State's platform with no return for a business entity corporation termed "Meta", "Meta Platforms, Inc." or "Meta Platforms" as of 29 October 2021. The Associated Press released the name change announcement of Defendants Facebook & Zuckerber: https://apnews.com/article/facebook-meta-mark-zuckerberg-technology-business-5ad543ab7780caae435935f0aca9fac6

9. Defendant Mark Zuckerberg is an adult California resident believed to be of sound mind legally and does business operations from 1601 Willow Road, Menlo Park, California 94025-1452, among other areas. Defendant Zuckerberg has traveled to and through "Sweet Home" Alabama.

10. Defendant Starbelt, LLC (Entity ID 517-012[8]) is a company duly formed and organized in the State of Alabama whose registered agent for service of process is 103 Foulk Road, Suite 202, Wilmington, Delaware 19803. Starbelt, LLC has a principal place of business of 100 South Profile Place NW, Huntsville, Alabama 35810.

## JURISDICTION, VENUE AND CHOICE OF LAW

11. This Honorable Court has subject matter jurisdiction over Plaintiffs' claims under 1332(d)(2), the Class Action Fairness Act of 2005 because at least one member of the Class which exceeds one hundred (100) members in the aggregate, is a citizen of a different state than Defendants and the amount in controversy exceeds several billion dollars, exclusive of interest and cost.[9]

12. This Honorable Court has jurisdiction per the Sherman Antitrust Act and deceptive trade practices laws. The Defendants have violated Section 1 of the Sherman Antitrust Act among other laws.[10] This Honorable Court has jurisdiction over the privacy rights of minors and torts related to intrusions into the privacy rights of minors.

13. The Defendants operate a business in the State of Alabama which includes its global data storage center which is located in Madison County, Alabama, and within this Court's jurisdiction. This Court has personal jurisdiction over Starbelt, LLC because it transacts business in this State and because the tortious conduct alleged in this Complaint occurred in, was directed to, and/or did emanate from Alabama. The Defendant Starbelt, LLC is a corporate resident of Alabama.

14. This Court has personal jurisdiction over Meta Platforms, Inc. and Defendant Mark Zuckerberg because the tortious and illegal conduct was conducted in and through the state of Alabama in which Defendants submitted themselves to the protections and

---

[8] Alabama Secretary of State, Secretary John Merrill, Business Entity Identification Number
[9] Value estimated of a similarly situated social media platform which is yet to be launched but was valued by experts and provides as near in kind "User" experience by forecast.
[10] *Mantiply v. Mantiply*, 951 So. 2d 638 (2006), *WYETH, INC. and Wyeth Pharmaceuticals, Inc. v. BLUE CROSS AND BLUE SHIELD OF ALABAMA* Date: January 15, 2010 Docket Number: 1050926

rights afforded by Alabama law in its profit interest operations. Defendant Zuckerberg has "trekked through " Alabama visiting and overseeing operations at Starbelt, LLC at least in February of 2017.[11] It is believed all images of both adults and minors were stored following facial recognition biometric tagging and were sorted by "template" at Starbelt. Minors images harvested, even if biometrics with Defendant Starbelt, LLC servers were deleted, remain secured in breach of privacy laws and stored following machine learn surveillance methods. Defendants have all conducted business in Alabama, have had "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[12] Defendant Meta Platforms, Inc. is believed to operate in California having done business as Facebook, Inc.. Starbelt, Inc. has Alabama as a principal place of business. Defendant Zuckerberg is subject to personal and subject matter jurisdiction in Alabama.

15. The corporate entities Facebook and Meta have acted like an individual in their "presence" without, as well as within the State of Alabama and had agents carry on actions within the State on its behalf satisfying due process and minimum contacts.[13] The terms "present" or "presence" are used merely to refer to the actions and activities of the corporation's agent within the State, albeit some done remotely but having contact with Plaintiffs within the State so as to satisfy the demands of due process. All Defendants are subject to the jurisdiction of this Court.

16. Notice per Code of Alabama § 8-19-10 (e) (2019) Deceptive Trade Practices, one of the counts, has been legally provided and perfected upon Defendants by mailing on 04 December 2021 additionally, while not required, via email.

17. The suit has filed a class notice herein asserted and the intentions stated per Federal Rules of Civil Procedure, Rule 23 to apply, a Motion for Class Certification. Unjust Enrichment may be brought and litigated as a Class Action where the requirements of Rule 23 are met. Code of Alabama § 6-5-60 codifies the intentions and tenets of both the Sherman Antitrust Act and the Clayton Act. According to this code

---

[11] https://www.wvtm13.com/article/facebook-founder-mark-zuckerberg-treks-through-alabama-makes-stop-in-birmingham/8960527

[12] *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 132 A.L.R. 1357. *See* Holmes, J., in *McDonald v. Mabee*, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608, L.R.A.1917F, 458. Compare *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316, 319, 63 S.Ct. 602, 604, 606, 87 L.Ed. 777, 145 A.L.R. 1113. *See Blackmer v. United States*, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375; *Hess v. Pawloski*, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; *Young v. Masci*, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158, 88 A.L.R. 170.

[13] L. Hand, J., in *Hutchinson v. Chase & Gilbert*, 2 Cir., 45 F.2d 139, 141

section, among others, competing businesses or consumers themselves can file a private right of action:  If the lawsuit is successful, the plaintiff can recover damages for injuries suffered as a result of the unfair practice.  Alabama has enacted antitrust laws in an effort to discourage collusion between companies as well as certain mergers and acquisitions that could give certain companies an unfair competitive advantage in the consumer market.

18.    The Right to Privacy[14] plays a unique role in American law and society. Privacy, although not explicitly protected by the Constitution, is considered a core value by most Americans. It has also taken on multifarious meanings so that it no longer conveys one coherent concept. But privacy rights guarantee an individual's right to a private life, find their authority in the Constitution, State Constitutions, Federal and State statutes, and tort law judicial decisions.

19.    The framers, however, were unable to address future changes in technology and the myriad of privacy concerns that have evolved as new technologies permeated their way into our society. The Supreme Court has broadly defined privacy as the right of the individual to control the dissemination of information about oneself. [See *Griswold v Connecticut*.] Privacy as guaranteed by the U.S. Constitution differs in two significant ways from privacy protected by tort law: (1) the types of acts constituting an invasion of privacy are very different, and (2) the type of protection provided to individuals - constitutional privacy protects against governmental intrusion while tort law primarily protects against invasion by private parties.  Machine learn biometric surveillance of minors is not an acceptable legal practice for a purported social media company.

20.    The contours of the constitutional right to privacy take on tort and statute framework when private individuals are involved.[15]  The right to privacy encompasses two (2) separate interests: (i) security of personal information and autonomy in making important decisions or decisional privacy which includes rights of privacy in association. *Whalen*, recognized by every Federal Circuit but D.C., has established the separate right to informational privacy.  These privacy rights are honored in part for "the deterrent effect that threats of disclosure of personal information on minors' decisions" will have by breaching of those rights and retention of personal information without proper legal

---

[14] https://corporate.findlaw.com/law-library/right-to-privacy-in-the-workplace-in-the-information-age.html
[15] See Griswold v. Connecticut 381 US 479, 484 (1965) holding that penumbras surrounding the First, Third, Fourth, Fifth, and Ninth Amendments created the right to privacy) and Whalen v. Roe 429 US 589 (1977) holding that individuals have a right to privacy in their intimate lives.

consent.[16]   Rights of minors to privacy which includes association, routine location or "whereabouts" and biometrics (facial templates) have been protected as "the Court delineated the three reasons to limit the scope as (i) they are of particular vulnerabilities, (ii) have a lesser ability to make good decisions and (iii) there is a parental role in child rearing that is due protection.[17]   In a public framework, "currently Courts consider the possibility that an individual will be harmed by a future non consensual disclosure of his/her private information when determining if a violation of the individual's right to informational privacy has occurred.[18] The trafficking in minors images coupled with location and biometrics information also created and creates an increased safety risk which privacy rights are intended to protect.

21.    The Due Process Clause of the Fourteenth Amendment protects against certain invasions which the Supreme Court has interpreted via "zones of privacy" that are "deemed fundamental" or "implicit in the concept of ordered liberty" and "deeply rooted in this Nation's history and tradition".[19]  Over time, the Court has determined that this right to privacy protects matters related to "marriage, procreation, contraception, family relationships, child rearing, education", "certain intimate conduct" and "association". Defendants have breached both rights of privacy of Plaintiff minors and others similarly situated and Facebook, now Meta, removed decisional privacy rights of minors by practice.  In *Whalen,* the Court recognized "the threat to privacy implicit in the accumulation of vast amounts of personal information in computerized data banks or other massive" files and left open comparable circumstances which likely violated individual informational privacy.  Defendants have accumulated vasts amounts of personal information to include biometric facial recognition markers in violation of

---

[16] Minors' Constitutional Right to Privacy, Helen L. Gilbert The University of Chicago Law Review: 1375 - 1410, 1376 (2007)
[17] Bellotti v. Barid, 443 US 622, 634 (1979)
[18] United States v. Westinghouse Electric Co, 638 F2d 570, 578 (3d Cir 1980) including "the potential for harm in any subsequent non consensual disclosure" in a multi factored test to apply when weighing competing interests in information disclosure.
[19] Roe v. Wade, 410 US 113, 152-153 (1973), quoting Palko v. Connecticut, 302 US 319, 325 (1937). The Supreme Court first announced this right to privacy in Griswold, rooted in "penumbras" of the First, Third, Fourth, Fifth, and Ninth Amendment's concept of personal liberty." 410 US at 153.  See also Whalen, 429 US at 600 n 23 (quoting Roe and finding a right to privacy in the Fourteenth Amendment.)

individual information privacy rights of minors[20] as set out herein did violate reasonable expectations of privacy and were converted for commercial benefit.

22.    For "zones of privacy" arguments, Plaintiffs had a legitimate expectation of privacy as minors which is *per se* or not one that must be expressed, depending upon the information disseminated by a third party.  The Court has found that privacy protection extends to personal communications as well as associations.[21]  Privacy invasions implicates "a fundamental right or one implicit in the concept of ordered liberty" which Defendants breached.[22]  Protection in privacy rights is afford to at minimum "the most intimate aspects of human affairs"[23] which association, whereabout locations and biometric facial markers should include.  Plaintiffs and other minors similarly situated have a reasonable expectation of privacy as to not have images scanned, facially recognized, stored with location information[24], templated and otherwise commercially appropriated.

## NATURE OF THE ACTION
## AND STATEMENT OF FACTS

---

[20] In Nixon v. Administrator of General Services former President Richard Nixon claimed his informational privacy rights were violated and the Court applied a "comparatively weak" privacy right given he was a public figure and the information protected was public in nature.  Same is the lowest of comparative standards when considering minors rights to privacy who by their very age likely lack the ability to given full consent to the information obtained and certainly were not able to consent to the biometrics of facial recognitions which have been stored and were templated by Defendants without proper legal permission.

[21] See Nixon, 433 US at 465.  Also see Anderson v. Blake 469 F3d 910, 914 (10th Cir 2006)(Acknowledging the right to informational privacy); James v. City of Douglas, 941 F3d 1539, 1543 (11th Cir 1991)(Recognizing the confidentiality branch of the right to privacy); Richard C. Turkington, Legacy of the Warren and Brandeis Article: The Emerging Unencumbered Constitutional Right to Informational Privacy, 10 NIU L Rev 479 (1990) (Discussing the incipient right of privacy regarding dissemination of personal information.)

[22] See Bloch v. Ribar, 156 F3d 673, 684 (6th Cir 1998) The First Circuit has yet to define the scope of the right to informational privacy but appears sympathetic to the Sixth Circuit's narrow interpretation.  See Vega-Rodriguez, 110 F3d at 183 ("suggests that the right of confidentiality protects only information relating to matters within the scope of the right to autonomy" which applies in the fact-pattern at bar given the minors right to autonomy is breached without proper legal consent.]

[23] Eagle v. Morgan, 88 F3d 620, 625 (8th Cir 1996) quoting WAde v. Goodwin, 843 F2d 1150, 1153 (8th Cir 1988).

[24] *Marcus Zanders v. State of Indiana, 73 N.E.3d 178 (Ind. 2017)* confirmed Carpenter v. United States, 585 US —, 138 S. Ct. 2206 (2018) which addressed cell-site location information (CSLI) finding an expectation of privacy wherein seven (7) days of tracking existed.  In the case at bar, every image represents a breach of the reasonable expectations of privacy regarding location, the biometrics of a minor's facial markings/indicators, associations and the like. See also Daily Times Democrat v. Graham, 162 So.2d 474 (Ala. 1964) (affirming a judgment for invasion of privacy against a newspaper which published a photograph taken of a woman when her dress was accidentally blown into the air at a local fair)

23.     This case seeks to redress the damages caused and to prevent the ongoing unjust enrichment, among other torts and antitrust violations, via the "digital conspiracy" of the Defendants all done with the intentions of data harvesting which includes illegally digitally farming via facial biometric recognition the images of minors. These surveillance methods violate the right of privacy of each minor.

24.     The Platform was originally designed as a college "hook-up", sex appeal forum or otherwise site for students seeking to court and connect for dating purposes. Thus, Defendant Zuckerberg and Facebook now Meta are aware of the power of the laws of attraction found in photographs. Thus at all times Defendants have been aware of the sensitive nature of photography and digital information.

25.     Defendants have illegally harvested, trafficked and stored Pandora's box of minors images in violation of their privacy rights and through back-door antitrust processes. This makes minors less safe. Facial recognition biometric "template" and "tags" posed and pose a real and concerning security threat to minors who are subjected thereby to exploitation and image trafficking.

26.     These templates and the image "machine learn" algorithm has created a reality where privacy rights of minors were invaded for profitious purposes without proper legal consent. And each minor faces finding their template or likeness being discovered or "pop-up" in the Metaverse, which is a virtual reality game. "I've long believed that the nature of our industry is that someday a product will replace Facebook. I want us to be the ones that build it, because if we don't, someone else will. …". This was said in a Hearing Before the United States House of Representatives - Committee on the Judiciary - Subcommittee on Antitrust, Commercial, and Administrative Law in July 29, 2020. That testimony of Mark Zuckerberg individually and for Facebook, Inc. confirms the intended usage of the minors images trafficked over and above the already experienced unjust enrichment from the same.

27.     The same principles, notwithstanding this action being a tort and statutory action against private corporations and a private individual, applies with regards to the process of privacy right breaches involving information. First, "acquisition describes the collection of an individual's information" and secondly, "disclosure describes the sharing

of an individual's information with an outside"[25] or a third party. Plaintiffs did not legally choose for their information, images and data to be acquisitioned and disclosed to third-parties via the harvesting, biometrics and trafficking practices of the Defendants. In fact, Defendants made promises as to how they would acquire and not unlawfully disclose images yet trafficking of minors images occured on an unfathomable scale. The "information need not to be embarrassing to be personal"[26] and thus due protection from tortious conduct and dissemination[27].

28.   On behalf of these individuals, the minors and others similarly situated we allege a breach of both Alabama Law and Federal Law regarding deceptive trade practices and deceptive acts. Plaintiffs' claim, among others, minors images were facially scanned by Facebook, Meta, Starbelt, LLC, Mark Zuckerberg or any third-party on behalf of same while engaging in deceptive trade practices and unjustly enriched themselves to the damage and injury of the minor to include a heightened risk of digital exploitation, sexual explotation and otherwise abuse of the minors rights of privacy.

29.   Images of the minors have time stamps to the minute and fractional second with exact location as a property saved to the file. The harvesting allowed Defendants the ability, which may be recreated, to know exact patterns of minors locations along with associates and details from the images of residences. This extent of disturbing database loading with the template, "digital fingerprint", biometrics, without proper legal consent are privacy violations and did unjustly enrich the Defendants.

30.   All Defendants have acted to breach minimum privacy protections of minors afforded by the constitution in violation of antitrust laws, the laws regarding contracts with minors, the laws regarding full faith and fair dealing, and both state and federal trust laws. Specifically, the Defendants have breached §1 of the Sherman Antitrust Act. The Defendants have gorged billions of dollars of profits unjustly and earned the same from misconduct, anticompetitive corporate behaviors and statutory breaches. Defendants conspired in market division.

---

[25] Lawall, 307 F3d at 790 ("Informational privacy' applies both when an individual chooses not to disclose sensitive information or is not afforded the legal choice" and "when an individual seeks or has certain assurances that such information will not be made public".)

[26] Alexander, 993 F2d at 1350 and Sheets, 45 F3d at 1388.

[27] In Gruenke v. Seip, a public high school student sued her high school swim coach for forcing her to disclose her pregnancy and then sharing this private information with officials. The court first determines whether the scope of the right to privacy exists and then makes a finding as to the students privacy interest was breached holding, "the students' privacy expectations is great". Ongoing expectations of privacy regarding association, surveillance of whereabouts and biometric facial recognition markers are privacy matters due protection.

31.     Facebook is the world's largest social media company, providing its users with social networking services that enable them to connect and communicate with family, friends and colleagues concerning subjects of common interest. Its name comes from the face book directories often given to American university students.[28] It was the most downloaded mobile app of the 2010s. Facebook launched its social networking service as The Facebook on February 4, 2004.[29] It was founded by Mark Zuckerberg and college roommates and fellow Harvard University students, in particular Eduardo Saverin, Andrew McCollum, Dustin Moskovitz and Chris Hughes.[30] The website's membership was initially limited by the founders to Harvard students but was expanded to other colleges in the Boston area, the Ivy League,[31] and gradually to most universities in the United States and Canada,[32 33] corporations,[34] and by September 2006, to everyone with a valid email address along with an age requirement of being 13 and older.[35 36] But over time Facebook has evolved to become a harvesting platform. Commenting on the evolution of Facebook Damian Collins MP, chair of the UK Parliament's Digital, Culture, Media and Sport Committee said: "We have to seriously challenge the claim by Facebook that they are not selling user data," "[t]hey may not be letting people take it away by the bucket load, but they do reward companies with access to data that others are denied, if they place a high value on the business they do together. This is just another form of selling."[37]

32.     As of October 30, 2021, Facebook is described as "an American online social media and social networking service owned by Meta Platforms."[38] It is basically a "Platform" which by agreement allows users in real-time and space to connect with other

---

[28] https://en.wikipedia.org/wiki/Facebook

[29] Phillips, Sarah (July 25, 2007). "A brief history of Facebook" – via www.theguardian.com.

[30] Carlson, Nicholas (March 5, 2010). "At Last — The Full Story Of How Facebook Was Founded". *Business Insider*. Retrieved November 26, 2015.

[31] "Company Timeline" (Press release). Facebook. January 1, 2007. Archived from the original on February 28, 2008. Retrieved March 5, 2008.

[32] Rosmarin, Rachel (September 11, 2006). "Open Facebook". *Forbes*. New York. Retrieved June 13, 2008.

[33] Nguyen, Lananh (April 12, 2004). "Online network created by Harvard students flourishes". The Tufts Daily. Medford, MA. Archived from the original on August 7, 2011. Retrieved August 21, 2009.

[34] Lacy, Sarah (September 12, 2006). "Facebook: Opening the Doors Wider". BusinessWeek, New York. Retrieved March 9, 2008.

[35] Abram, Carolyn (September 26, 2006). "Welcome to Fb, everyone". The Facebook Blog. Retrieved March 8, 2008.

[36] "Terms of Use". Facebook. November 15, 2007. Retrieved March 5, 2008.

[37] https://www.bbc.com/news/technology-46618582

[38] https://en.wikipedia.org/wiki/Facebook

individuals digitally for social, family, friend, interests and professional/business interactions. That is what users expect when creating an account and is what they are promised per the terms of agreement. Social Media Platforms are driven to expand and maintain the highest number of daily active users (DAUs). "The number of Facebook's daily active users (DAUs) currently stands at 1.908 billion people, meaning 65.9% of the total monthly users' log in on a mobile device or desktop each day."[39]

33. This "digital connection" to the Platform in a real time, equal access setting with the usage period being at the user's discretion at any time 24 hours a day, is the consideration provided by Defendant Facebook per its terms and conditions. Facebook did and does business in the State of Alabama to include soliciting and inviting new users to create accounts on its platforms. Users also provided consideration with the expectation that the digital "recollection" or capturing of "memories" in digital time could be reflected upon and enjoyed in the future with the date, location, friends, and other digital markers being utilized for the future recollection. Same were used to harvest minors' images.

34. The recent name change to the manifest their intent and how the focal point of the Defendants was and is "data harvesting" for profit[40]. And hence the common term "metadata" has surfaced in the attempted rebrand as "Meta Platforms", name wise. This "rebrand" is actually the culmination and otherwise de facto evidence of the conspiracy between Defendants Facebook, Zuckerberg, and now Meta Platforms to unjustly enrich themselves and otherwise tortiously profit from the users' images to include minors images and information. Facebook, while making promises of portability and open source coding no later than July 20, 2018, is known to have a unilaterally drawn digital form contract.[41] In fact, <u>The Huffington Post</u> writes when referencing the volumes of terms while maintaining a "change at will" provision for Facebook: "So, like every other one of the world's 1.28 billion monthly active Facebook users, you blindly agreed to

---

[39] https://backlinko.com/facebook-users
[40] Notwithstanding the staggering profits from the systematic data harvesting and image farming, Zuckerberg's 'original founder's letter' indicates the pretexts: "we don't build services to make money; we make money to build better services." https://about.fb.com/news/2021/10/founders-letter/ Same was said following years of illegal services as set out herein.
[41] Illusory contract is a contract between two parties in which the consideration for the contract is illusionary. In such contracts one party gives as consideration a promise that is so insubstantial that it would not result in or impose any obligations. Such a promise would make the contract unenforceable. https://definitions.uslegal.com/i/illusory-contract/

Facebook's Terms and Conditions without reading the fine print."[42]  Generally speaking it is a constitutionally held tenant that minors legally should not and cannot waive privacy rights by contract, but for Court order or medical exception, age considered.  *To wit:*

***Defendant Facebook, Inc. - An "accept" Platform window for one of the evolving terms, digital form contracts over multiple generations.***



35.     Facebook indisputably attempts to cover its bases with volumes of terms and conditions and while the same are open ended, form terms that favor Defendants over Plaintiffs. Defendants made certain promises and in exchange received significant consideration.  Defendant's terms provide that Facebook now Meta "will respect your choice when we use it" regarding data and information obtained about a particular user.

36.     Specifically Facebook states:

---

[42] https://www.huffpost.com/entry/facebook-terms-condition_n_5551965
[43] Sourced: https://www.huffpost.com/entry/facebook-terms-condition_n_5551965

CLASS ACTION COMPLAINT

Page **14** of **55**

1. You give us permission to use your name, profile picture, content, and information in connection with commercial, sponsored, or related content (such as a brand you like) served or enhanced by us. This means, for example, that you permit a business or other entity to pay us to display your name and/or profile picture with your content or information, without any compensation to you. If you have selected a specific audience for your content or information, we will respect your choice when we use it.

Facebook

37.     But no agreement or right to trafficking in minors images, templating and creating a digital dossier of sorts and otherwise unjust enrichment of Defendants is afforded. In fact, Facebook itself states time and time again that it is "learning" about "your interests primarily from the things you do on Facebook…" and, as that information grows, Defendants leverage same for profit and yet continues to fail to deliver on its promise of portability and platform-to-platform migration. This occurred while farming adult and even minors images for facial recognition biometric templating, tagging and bundling. It is also believed that facial recognition "templates"[44] have been sold to third parties which may include contracts with public agencies.

38.     So, rather than remain objective and balanced in fulfilling its conditions and promises, Facebook harvests more and more information about users.

**FACEBOOK BEGINS VAST DATA HARVESTING & IMAGE FARMING**

39.     Defendant Facebook has so finely tuned data harvesting and images related to minors and those associated it uses the practice of "demographic categorizing" to include down to race and gender using biometrics. Investigating the matter, The Huffington Post further contributes in reporting:

---

[44] The "template" is understood to be the primary image from which facial recognition markers are coded via the feature used by Defendants. This template was then used for scanning of all other uploaded images by anyone on Defendant's Platform to compare, tag, bundle and store the images to include minors images cataloged on a server at Starbelt, another location and or third-party servers which does not disclude servers on foreign soil.

"Brokers share this information among "multiple layers of data brokers providing data to each other," and then analyze the data to make "potentially sensitive inferences" about the consumer. These sensitive data points could range from health specifics, like high cholesterol, to broader demographic categories -- like the so-called "Urban Scramble," which includes a "high concentration of Latinos and African Americans with low incomes" or the so-called "Rural Everlasting," which includes single men and women over the age of 66 with "low educational attainment and low net worths."[45]

40.     Facebook is aware that individuals depend on its platform for not just "friend connections" and "timeline photos" which are treated like a family album to many, yet, used the same deceptively while minor image harvesting for biometrics, demographic categories and other privacy information.

41.

42.     Facebook also fraudulently suppresses its backdoor route to gathering information and data harvesting for profit by purportedly offering a way out, yet, the "opt out" provision is merely a "smokescreen" of terminology, all while not developing portability and harvesting images and information on minors.

43.     FTC Chairwoman Edith Ramirez added her comment that given it is evident Facebook only later revises the terms, outsources who gathers the users' data after opting out or otherwise later creates a "form offer" that restarts the data harvesting and believed to do so in its entirety while platform-to-platform data portability and coding as promised goes undeveloped.

44.     "Meta, the new name for the parent company that oversees Facebook and Instagram, suddenly wants to be less creepy. According to a post on the Meta for Business blog, the company is blocking advertisers from using detailed ad targeting options that show ads based on your engagement in 'sensitive' areas including race or ethnicity, religious views, political beliefs, sexual orientation, health, and a whole lot more." "We've heard concerns from experts that targeting options like these could be used in ways that lead to negative experiences for people in underrepresented groups,"[46] Graham Mudd, Meta's vice president for marketing and ads, writes in the post.

---

[45] https://www.huffpost.com/entry/facebook-terms-condition_n_5551965
[46] https://www.theverge.com/2021/11/9/22773038/meta-detailed-targeting-ads-facebook-instagram-messenger

Defendants were demographic categorizing minors and biometric scanning minors images.

45.     Facebook now Meta has gone so far to collect locations on all its users and are continuing to collect the same of users including routine "whereabouts" of minors whose images where harvested and trafficked.   *To wit:*



46.     <u>The Huffington Post</u> writes:

"While you can clear your history and turn off the app at will, Facebook noted that it "may still receive your most recent precise location so that you can, for example, post content that's tagged with your location or find nearby places." So some amount of tracking is happening, no matter what.…"[47]

---

[47] https://www.huffpost.com/entry/facebook-terms-condition_n_5551965

**How we use the information we receive**

We use the information we receive about you in connection with the services and features we provide to you and other users like your friends, our partners, the advertisers that purchase ads on the site, and the developers that build the games, applications, and websites you use. For example, in addition to helping people see and find things that you do and share, we may use the information we receive about you:

- as part of our efforts to keep Facebook products, services and integrations safe and secure;

- to protect Facebook's or others' rights or property;

- to provide you with location features and services, like telling you and your friends when something is going on nearby;

- to measure or understand the effectiveness of ads you and others see, including to deliver relevant ads to you;

- to make suggestions to you and other users on Facebook, such as: suggesting that your friend use our contact importer because you found friends using it, suggesting that another user add you as a friend because the user imported the same email address as you did, or suggesting that your friend tag you in a picture they have uploaded with you in it; and

- for internal operations, including troubleshooting, data analysis, testing, research and service improvement.

47.    Plaintiffs do not oppose data sharing and their digital identity being shared with law enforcement for legal and constitutional purposes.  Yet, any facial recognition biometric templates of minors sold to third parties is illegal and by pattern a privacy breach notwithstanding a later, less than full disclosure, claim by Defendant to have deleted and removed the templates.

48.    The Court should note that Defendant actually acknowledges the agreement is open ended.  Defendant Facebook writes: "Your continued use of Facebook following changes to our terms constitutes your acceptance of our amended terms".  *To wit:*

**14. Amendments**

1. Unless we make a change for legal or administrative reasons, or to correct an inaccurate statement, we will provide you with seven (7) days notice (for example, by posting the change on the Facebook Site Governance Page) and an opportunity to comment on changes to this Statement. You can also visit our Facebook Site Governance Page and "like" the Page to get updates about changes to this Statement.

2. If we make changes to policies referenced in or incorporated by this Statement, we may provide notice on the Site Governance Page.

3. Your continued use of Facebook following changes to our terms constitutes your acceptance of our amended terms.

49.     Thus open ended terms to allegedly justify trafficking in minors images and biometric information. And the practice has not changed with Meta Platform, Inc., formerly Facebook, having perhaps assumed full ownership rights of the minors' data and images harvested which are believed to be stored in Huntsville, Alabama, among other locations at Starbelt, LLC. Same is now being incorporated into a "virtual world" or "virtual reality world" which any mature, rational mind acknowledges as a form of video gaming. The perpetual inclusion in this "metaverse" video game to include data, biometric demographics information, and scanned images obtained as part of data harvesting, minor image trafficking, and deceptive trade practice is an ongoing damage. The Platform currently notices:



The Facebook company is now Meta. While our company name is changing, we are continuing to offer the same products, including the Facebook app from Meta. Our Data Policy and Terms of Service remain in effect, and this name change does not affect how we use or share data. Learn more about Meta and our vision for the metaverse.

## Terms of Service

Welcome to Facebook!

Facebook builds technologies and services that enable people to connect with each other, build communities, and grow businesses. These Terms govern your use of Facebook, Messenger, and the other products, features, apps, services, technologies, and software we offer (the Facebook Products or Products), except where we expressly state that separate terms (and not these) apply. These Products are provided to you by Facebook, Inc.

50.     The deception, abuse, and breaches of Facebook have not gone unnoticed by the U.S. Government while the civil redress to private users has.  According to Tony Romm with *The Washington Post* who writes on July 24, 2019 regarding the $5 billion Federal Trade Commission fine of Facebook, Inc. n/d/b/a Meta Platforms, LLC:

> "The U.S. government on Wednesday issued an unprecedented rebuke of Facebook after a year of massive privacy mishaps, charging that the company deceived its users and "undermined" choices they made to protect their data ..."[48]

51.     According to Romm, "the Federal Trade Commission alleged that Facebook had repeatedly misled its 2.2 billion users."[49]   And he reported, "Despite repeated promises to its billions of users worldwide that they could control how their personal

---

[48]https://www.washingtonpost.com/technology/2019/07/24/us-government-issues-stunning-rebuke-historic-billion-fine-against-facebook-repeated-privacy-violations/
[49]https://www.washingtonpost.com/technology/2019/07/24/us-government-issues-stunning-rebuke-historic-billion-fine-against-facebook-repeated-privacy-violations/

information is shared, Facebook undermined consumers' choices," FTC Chairman Joe Simons said in a statement."[50]

52.    The pattern of deception and abuse by Facebook went so deep that it was found to have partnered with Cambridge Analytica to improperly gain access to 87 million Facebook users' names, "likes", and other personal details, all to monetize the data and information it had harvested while precluding migration and transfer to a competitive social media provider/carrier.  It involved minors images and adult images being stored, but not yet facially or biometrically templated so it is believed.

53.    As of March 13, 2021, Facebook reported 2.85 billion monthly active users, and 1.88 billion daily active users.  Facebook has become such a staple of 21st century life - with huge numbers of people relying on it for daily news, product recommendations, social interactions, family photo album timelines, and other social interactions - that many politicians and academia have characterized it as a "public utility"[51], albeit digital as would electrical services be considered.  Indeed, in a 2007 interview with Time, Facebook's CEO, Mark Zuckerberg, himself characterized Facebook as a "social utility".[52]

54.    By December 2005, Facebook had reached six million users. On October 1, 2005, Facebook expanded to 21 universities in the United Kingdom and others around the world. Facebook launched a high school version in September 2005, which Zuckerberg called the next logical step. At that time, high school networks required an invitation to join. This is the beginning of the "friend network" value appreciable and utilized by Defendants to unjustly enrich themselves while making portability and migration promises in writing, at least by July 20, 2018.


**FACEBOOK FOCUSES UPON LONG-TERM
MONETIZATION STRATEGY FROM DATA HARVESTING, MINOR'S IMAGE
FARMING & TRAFFICKING
[MARCH 2008]**

---

[50] https://www.washingtonpost.com/technology/2019/07/24/us-government-issues-stunning-rebuke-historic-billion-fine-against-facebook-repeated-privacy-violations/
[51] *See also* Dipayan Ghosh, "Don't Break Up Facebook - Treat it Like a Utility", Harvard Business Review (May 30, 2019); Anjana Susarl, Facebook shifting from open platform to public utility, UPI (Aug. 17, 2018)
[52] Lauren Locke, "The Future of Facebook", Time (July 17, 2007)

55.    In September 2009, Facebook stated that it had turned cash flow positive for the first time, which has since, via the data and image harvesting, become an extremely lucrative a platform.[81] In early 2012, Facebook disclosed that its profits had jumped 65% to $1 billion in the previous year when its revenue, mainly from advertising, had jumped almost 90% to $3.71 billion.[82]

56.    In February 2010, Facebook acquired Malaysian contact-importing startup Octazen Solutions.[88] On April 2, 2010, Facebook announced acquisition of a photo-sharing service called Divvyshot for an undisclosed amount.[89] It was at this time facial recognition scanning, the "template" of minor and adult images was created and used until November 02, 2021.[53]   Thus for approximately eleven (11) years the Defendants did farm minors' and adults' images as well as, biometric sorting, storing and trafficking of the images.  Same was a rampant practice and done without proper legal permission and with illusory protections asserted.

57.    On April 12, 2012, Facebook acquired the photo sharing service, Instagram, for approximately $1 billion in cash and stock.[91][92] Again, this indicates the move towards gathering amateur images, family images, personal images, professional images, and the like, all for no consideration paid, despite ongoing value being provided by the Plaintiffs and other similarly situated users.  On March 8, 2013, Facebook announced that it acquired the team from Storylane, but not the product itself.[93] The acquisition is the most ever paid for a venture-capital backed startup.[97] On March 25, 2014, Facebook announced they had acquired virtual reality startup Oculus VR for $2 billion in cash and stock.[98] In April 2014, Facebook launched anonymous logins so that people can use apps without giving them their data, but images were discretely precluded and other personal information was still harvested.   Portability and open source coding went undeveloped by actual and constructive design of Defendants. Facebook announced that it hit the milestone of one billion users accessing it on a single day on August 27, 2015.

58.    For example, on December 27, 2016, the investigative nonprofit, ProPublica, reported that it had identified more than 52,000 unique interest categories by Facebook to classify its users.[54]   This includes race, gender and other demographics of minors

---

[53] https://www.bbc.com/news/technology-51309186
[54] Julia Angwin, Surya Matu and Terry Parris Jr., Facebook Doesn't Tell Users Everything it Really Knows  About Them, ProPublica (December 27, 2016)

without proper legal permission to have even harvested the minors' images all via a "machine-learned model" for enrichment and the "metaverse".

59. As part of its image and data harvesting operations, Facebook began facial recognition scans under the pretext it would better the companies advertising revenues by expanding its ability to track users' spending and social habits and further expanded its advertising network as the same allowed an "alert" which was not first built into the algorithm. But Defendants used all of the images in hopes of profiting from advertisers, third-party sales, and creating a "metaverse" to its own unjust enrichment and from trafficking minors images.

60. Thus, while Facebook alleges it was seeking to help to prevent people from impersonating others[55], Facebook expanded its use of facial recognition technology by introducing a new tool that would alert people that a friend, or a friend of a friend, uploaded a photo of them, even if they had not been tagged in the picture simply as a byproduct of having the facial recognition biometrics scans already encoded into the algorithm for image and data harvesting. It created a global web of exposure scanned and tagged to individual Plaintiff minors and other minors similarly situated using their images, facial biometrics and templating them.

61. In December of 2020, Facebook was forced in Europe to modify its facial recognition scanning of minors in response to a change in privacy laws.[56] This harvesting method went on purportedly until November 2, 2021, at which time Facebook now Meta announced it was no longer going to utilize this feature and would be deleting the "template" for its facial recognition algorithm. Same follows, however, that the procuring and utilization of facial scans of minor's images and adult's images for profit and otherwise transferring this information to third parties was part of the antitrust and unjust enrichment profit scheme.

## FACEBOOK EXPANDS DECEPTIVE TRADE PRACTICES

---

[55] "Facebook Just Pushed Its Facial Recognition Into a Creepy New Future". *sciencealert.com*. Retrieved April 3,2018.
[56] "Facebook has switched off some of its child abuse detection tools in Europe in response to new rules from the EU. The company said it has had no choice but to do so, since the new privacy directive bans automatic scanning of private messages." "This train crash has been approaching since the summer," said John Carr of the Children's Charities' Coalition on Internet Safety. "Neither the EU nor one of the world's largest and most powerful tech companies could find a way of avoiding it. It is a very sad day for the children of Europe." "We are heading for a very strange world if privacy laws can be used to make it easier for paedophiles to contact children, or for people to circulate or store pictures of children being raped."" https://www.bbc.com/news/technology-55399509

62.    During the vast data harvesting and image farming of users and minors, and those who would not even have an account, being biometric "templated" and stored, Defendant Facebook made a "creepy" expansion, as it announced on December 19, 2017 that Facebook would not only simply use of all the users' "images" (amateur, minors non-account holders, personal, professional, and/or family), but also all of his/her associations which by facial recognition were digitally known and stored via the "template".  All was used for better categorizing, coding, and studying that user for the purposes of selling to third-parties and building its "metaverse" while purporting to be an objective, fair, community oriented social media platform.  "If Facebook were a country, it would be the most populous nation on earth."[57] Thus, Defendants have created biometric  templates and or likenesses for storage and a video game, albeit by derived algorithm computer generated content, using minors images they trafficked without proper legal permission and have imported the same by algorithm into a "metaverse" which competes with the natural law world, minors rights to privacy and identity.  All was done for profit via illegal privacy breaches and deceptive trade practices.

63.    On February 16, 2017, Defendant Mark Zuckerberg (Facebook's principal founder and CEO) pened a long note on his personal Facebook titled "Building Global Community" that discusses  having a supportive, safe, informed, civically-engaged, and inclusive community, while actually developing closed source coding and while biometric scanning minors images illegally.  These same are deceptive business practices and otherwise violate antitrust laws for the reasons set out herein.

64.    Facebook acquired "Boston-based biometric ID verification startup, Confirm.io, which offers a system for verifying the authenticity of ID cards, biometrics, and facial recognition."[58]    This acquisition occurred in January 2018 and was the

---

[57] https://dzone.com/articles/how-is-facebook-deploying-big-data - "Facebook stands today as one of the most popular social networking sites, comprising of 1.59 billion accounts, which is approximately the 1/5th of the world's total population."
[58] "Facebook acquires biometric ID verification startup Confirm.io". *techcrunch.com*. Retrieved April 3, 2018., "Confirm for Community Safety Effort". *bloomberg.com*. January 23, 2018. Retrieved April 3, 2018.

culmination of digital pieces for the platform necessary to maximize advertising profits as the same now allowed another level of pixelation information to be harvested regarding users. Facebook acquired personalized image search engine Dreambit on January 11, 2018 for more minor and adult image biometric farming & image trafficking.

## FACEBOOK AND ZUCKERBERG DENY DECEPTIVE TRADE PRACTICES AS PART OF LONG-TERM MONETIZATION STRATEGY AND PROMISE OPEN SOURCE CODING, PLATFORM MIGRATION OF DATA HARVESTED & IMAGE STEWARDSHIP
## [APRIL 2018]

65.     Defendants utilized the "information superhighway" to harvest, facially biometric and traffic the images of minors for profit.  Regarding data "control" of the user when questioned in a Congressional hearing, Zuckerberg would reject suggestions from Congress members that Facebook users did not have enough control over their data.[464]   When Mark Zuckerberg appeared before the House Energy and Commerce Committee in the aftermath of the Cambridge Analytica revelations, he tried to describe the difference between "surveillance and what we do." "The difference is extremely clear," a nervous-looking Zuckerberg said. "On Facebook, you have control over your information... the information we collect you can choose to have us not collect."[59]   But minors' images and information illegally harvested and trafficked was not mentioned or precluded.  Thus, this was and is simply not objectively true.

66.     Zuckerberg also said, "I'm proud that we stand for American values like giving every person a voice..." yet all Defendants did not give minors a voice before biometric scanning, templating and storing their images and related digital identity to include locations, race, gender, and associations. Facebook, now Meta, also utilized that information and the images to create the "metaverse" which it now unjustly enriches Defendants having used minors' digital templates and identities in the development process.   Zuckerberg claimed they were "…competing as vigorously as we can within the rules", yet up until November 2, 2021 the Defendants were knowingly scanning minors images for templating and biometric markers.  Zuckerberg went on to say "…we

---

[59]

https://www.forbes.com/sites/thomasbrewster/2018/04/16/huge-facebook-facial-recognition-database-built-by-ex-israeli-spies/?sh=7f9430ea7f18

invest around $10 billion per year in research and development" while neglecting to disclose the same involved machine learned templating, tracking and surveying or spying in violation of privacy laws. Defendant Zuckerberg said: "Ultimately, I believe companies shouldn't be making so many judgments about important issues like harmful content, privacy, and election integrity on their own. That's why I've called for a more active role for governments and regulators and updated rules for the internet." Yet Defendants suppressed their facial recognition, minor image harvesting and trafficking practices. Defendants did so while knowing of its duty of "… protecting society from broader harms." The harvested and trafficked images and information were marshaled while Defendants knew there were threats and risks de facto with the need for "new technologies to tackle emerging threats like deep fakes." Thus, Defendants continued the minor image biometrics, harvesting and trafficking while knowing deep fake technology was emerging and Defendants did so while also gathering from minors routine "whereabouts" and location patterns for storage and profitious use. Defendant Zuckerberg said: "We also contributed aggregated anonymized location data…" A telltale sign of his awareness of the inherent dangers posed by trolling and trafficking in minors images, hence minors biometrics, associations and exact locations are "aggregated" and machine learned by Defendants practices.

67. While before Congress, not a single member of the committee pushed the billionaire CEO, Defendant Zuckerberg, about surveillance companies who exploit the data on Facebook for profit. *Forbes* has uncovered one case that might shock them: over the last five years a secretive surveillance company founded by a former Israeli intelligence officer has been quietly building a massive facial recognition database consisting of faces acquired from the giant social network. Jennifer Lynch, senior staff attorney at the Electronic Frontier Foundation, said that if the facial recognition database had been shared with the US government, it would threaten the free speech and privacy rights of social media users. Plaintiffs allege a database with illegally harvested minors images exists. Same has been shared with various third-party companies and government agencies.

68. Defendant Zuckerberg after farming billions of minors images and adult images templated and sorted confirmed their intended transition: "We have also helped advance nascent technologies like artificial intelligence (AI), augmented reality (AR),

and virtual reality (VR)."[60]   Minors images stored and in any manner used for "augmented reality" and "virtual reality" development is improper and violates the same rights of privacy.  Same is an appropriation of likeness for commercial use.

69.   The first thing people grab from their homes in a fire are their picture albums.  Facebook knew this and did gain this priceless level of control and ownership over the personal, family, and friends' pictures of the Plaintiffs and class of minors by image harvesting and trafficking.  Plaintiffs relied upon the terminology "Album" and "Albums" when uploading personal photographs, business photographs, and other content of value, some of which includes intellectual property and great sentimental value that legal privacy rights were going to be honored by Defendants. Defendant Facebook has evolved its platform into a conspiracy by and through the "machine-learned model" to farm minors images bundled by template as well as adult images. Defendants have breach the terms of the user agreements and law.   Defendant Facebook even had "live facial recognition systems" which identified the location of those depicted in the images to include the patterns of locations of minors it farmed images of and templated.[61]   "There is no doubt that Facebook is one of the largest Big Data specialists, dealing with petabytes of data, including historical and real-time, and will keep growing in the same horizon."[62]



70.   As part of their digital conspiracy, Defendants have also sold for value to third parties with consideration not paid to the Plaintiffs, information, digital images,

60

https://docs.house.gov/meetings/JU/JU05/20200729/110883/HHRG-116-JU05-Wstate-ZuckerbergM-20200729.pdf
[61] https://www.bbc.com/news/technology-51309186
[62] https://dzone.com/articles/how-is-facebook-deploying-big-data
[63] https://www.bbc.com/news/technology-51309186

CLASS ACTION COMPLAINT

Page 27 of 55

photographs with facial recognition tags of minors and adults, and other digital tangibles for value as part of its overall unjust enrichment and conspiracy to commit tort in creating the metaverse. Facebook now Meta collects vast amounts of data globally from each "User" which it has and does store under the company name Starbelt, LLC. These companies, along with Defendant Zuckerberg, have made billions of dollars of profit using the information and images unjustly gained and will continue to profit via unjust enrichment from trading the minors images and from their likeness or appropriation in the metaverse and with harvested storage of the images and data. These are tortious unjust enrichments and in violation of the terms of agreement with promises to the "Community" and both state and federal law.

71.     Defendants offered a "bait and switch" approach over time, gaining by deception, tortious information, data and images from the Plaintiffs and those similarly situated which was used to unjustly profit.

72.     In the "digital age", the gaining or marshaling of information has great value. As of October 2021, Facebook had a value of $880 billion.

73.     The Defendants used the likeness and image of the Plaintiffs without the bargain for consideration and while expanding its monopolistic anticompetitive practices. *National Collegiate Athletic Association v. Alston* held that even an amateur's likeness is the property and right of that individual which defendants have trafficked in to include images of minors used in algorithms to create a virtual reality game for profit. All templating, biometrics and digitally identifying of minors images for storing and commercial leverage was illegal. The National Collegiate Athletic Association regarding federal antitrust[64] law ruled the relationship was not simply "not a student's game"; it was an "organized commercial enterprise" featuring athletes that were "highly profitable."[65] The same applies in this case, both principally and individually, as the minors images were harvested by "organized commercial enterprise" along with others and used for algorithm, software generated and machine learned metaverse which has been and is "highly profitable".[66]

74.     According to internal Facebook documents, and current and former Facebook employees and contractors recently interviewed by various journalists,

---

[64] https://www.supremecourt.gov/opinions/20pdf/20-512_gfbh.pdf
[65] *Alston v. NCAA* at 78.
[66] https://www.law.cornell.edu/supct/cert/20-512

Facebook actively solicits, encourages, and assists with data and information harvesting which it utilizes and sells for value. This pattern shows the overall data and identity harvesting purpose in privacy breach as Facebook.

75. As <u>ProPublica</u> explained: "Every time a Facebook member likes a post, tags a photo, updates their favorite movies in their profile, posts a comment about a politician, or changes their relationship status, Facebook logs it."[67]

76. Defendant Zuckerberg is and has been aware of the detrimental reliance and unjust enrichment of the Company while in breach of antitrust law. Zuckerberg has maintained personal and professional control of the Company and has been said by mentor Roger McNamee to have "the most centralized decision-making structure I have ever encountered in a large company"[68] when referring to Zuckerber's control over Defendant Facebook. Defendant Meta Platforms, Inc. formerly doing business as Facebook, Inc. owns and operates the Facebook Data Center Huntsville which is located at 100 South Profile Place NW, Huntsville, Alabama 35810 and consists of a 970,000 square foot facility[69] purposed with data storage. The $750 million datacenter project in Huntsville was previously known by the codename "Starbelt." Starbelt is believed to be the location where the bulk of the data, minors' images globally harvested, and methods of functioning and control at issue are warehoused. Defendants have conspired to ensure all possible data, biometrics and other minors' information is harvested and maintained for the purpose of unjustly enriching themselves.

77. Facebook now Meta created a "template" for each user and minors via the facial biometrics recognition scans which was used thereafter for comparative scans of images. "Understanding that led to a redesign of Facebook's storage architecture, keeping the Haystack service for hot photos, with F4, a slower tier, for warm storage of images that haven't quite stopped being viewed, before finally deleting the extra copies and moving them to an offline cold storage facility." The "cold storage" of minors and adults scanned and sorted ...just rack after rack after rack of storage. [70]

78. The weight of the privacy breaches is enormous and the vastness of impact then, now and in the future must be considered. *To wit:*

---

[67] Julia Angwin, Terry Parris Jr. and Surya Mattu, What Facebook Knows About You, <u>ProPublica</u> (December 28, 2016)

[68] Bissell, Tom (January 29, 2019). "An Anti-Facebook Manifesto, by an Early Facebook Investor". Archived from the original on February 9, 2021. Retrieved November 25, 2019 – via NYTimes.com.

[69] https://baxtel.com/data-center/facebook-huntsville

[70] https://thenewstack.io/facebook-storage/

- Every 60 seconds: 317 thousand status updates are added, 147 thousand photos are uploaded, and 54 thousand links are shared on Facebook
- Facebook users generate 8 billion video views per day on average, 20% of which are live broadcast
- In 2018, Facebook had 15 million square feet of data center space among its 15 campuses around the globe that host <u>millions of servers.</u>[71]
- The actual minor image harvesting without proper legal permission given this volume of minor's images already harvested and risk of and active trafficking of minors images using that harvested is a catastrophic risk which carries irreparable harm.

79.    There are more than 20 billion uploaded photos on Facebook, and each one is saved in four different resolutions, resulting in more than 80 billion photos. As we mentioned previously, Facebook users upload around 147,000 photos every minute which makes it 2,450 photos per second**.**[72] Defendants did thus harvest and traffic in billions of minors images, indisputably in breach of privacy laws by introducing machine learn biometric scanning.

80.    Facebook has as recently as November 2, 2021[73] announced it plans to remove its facial recognition feature and delete all prior scans, but this comes after the same was utilized for advertiser profits, enriched the Defendants unjustly and otherwise disseminated to third parties as part of the data harvesting operation of minors images.

81.    Some estimates of the annual value of data per Facebook user range from $2 to $91.[74] This is based on calculations and estimates of how much your data is worth to Facebook. Thus, per average use to include having harvested their data and images the annual value per account ranges from $2 to $91. And these images may be used in perpetuity.  PopularMechanics.com says: "As for the "worth" of your data, to derive a (very) crude estimate, one could take Facebook's 2018 first-quarter revenue ($11.97 billion), divide by the number of active users (1.45 billion), and come up with about

[71] https://www.pingdom.com/blog/the-software-behind-facebook/
[72] https://www.pingdom.com/blog/the-software-behind-facebook/
[73]https://www.theguardian.com/technology/2021/nov/03/why-is-facebook-shutting-down-its-facial-recognition-system-and-deleting-faceprints
[74] https://www.zdnet.com/article/how-much-is-your-data-worth-to-facebook/ - Emil Protalinski for Friending Facebook | May 15, 2012 | Topic: Social Enterprise

$8.25 per quarter, or $33 a year."[75]  Pam Dixon, executive director of the World Privacy Forum, says that a profile of your data exists which includes minors images. "..., if you were applying to a private college, they might buy your data to find out if you can afford tuition before deciding to admit you."[76]

82.     All Plaintiffs and those similarly situated have exchanged as consideration time, images, data, information, and friend networks only have sold to third-parties. Plaintiffs also seek monetary relief in the form of damages and/or disgorgement of profits unjustly earned by Facebook and the Defendants in conspiracy to advance deceptive trade practices by collecting troves of minors images with biometrics.

83.     Plaintiffs seek monetary, declaratory, and equitable relief against Facebook, Starbelt, LLC, and Zuckerberg on behalf of themselves and other similarly-situated individuals by asserting claims for violations of Sherman Antitrust Laws, Section 1, Deceptive Trade Practices and unjust enrichment.  *To wit*:

### Facebook's Terms of Service

Section 1 of Facebook's Terms of Service (*see supra* note 7) ("TOS") — titled "**The services we provide**" — provides in relevant part:

> Our mission is to give people the power to **build community** and bring the world **closer together**. To help advance this mission, we provide the Products and services described below to you....
>
> "Use and develop advanced technologies to provide safe and **functional services** for **everyone**:
>
> We use and develop advanced technologies - such as **artificial intelligence, machine learning systems, and augmented reality** - so that people can use our Products safely regardless of physical ability or geographic location . . . And we develop automated systems to improve our ability to detect and remove abusive and dangerous activity that may harm our community and the integrity of our Products."
>
> Section 3 of the TOS — titled "Your commitments to Facebook and our community" — provides in relevant part:

---

[75] https://www.popularmechanics.com/technology/security/a21272151/facebook-data-money-value/
[76] https://www.popularmechanics.com/technology/security/a21272151/facebook-data-money-value/

**We provide these services to you and others** to help advance our mission. **In exchange**, we need you to make the following commitments....

2. What you can share and do on Facebook:

We want people to use Facebook to express themselves and to share content that is important to them, but not at the expense of the safety and well-being of others or the **integrity of our community**. You therefore agree not to engage in the conduct described below (or to facilitate or support others in doing so):

1. You may not use our Products to do or share anything:

> That violates these Terms, our Community Standards, and other terms and policies that apply to your use of Facebook.

> That is unlawful, misleading, discriminatory, or fraudulent.

[**Bold** emphasis added]

84.    The Community Standards referenced in Section 3 of the TOS are hyperlinked to a page that provides in relevant part: "Safety: We are committed to making Facebook a safe place."  There are roughly "200 'social networking websites,' and most people would not recognize the name of 195 of them".[77] Many corporate Executives see and hold the opinion that: "Facebook is an advertising platform."[78] LinkedIn.com, Gab.com and the Truth Social Media Platform both offer similar features but have not trafficked in minors images, minors demographic categories, biometrics, and created dossiers for spying and surveillance for profit.

## FOLLOWING UNJUST ENRICHMENT AND ANTITRUST PRACTICES FACEBOOK BECOMES META PLATFORMS, INC. [NOVEMBER 2021]

85.    From September 2021 to November 2021, Facebook makes and executes upon prior plans to operate as "Meta Platforms" and is described as "an American online social media and social networking service owned by Meta Platforms."[79] It is basically a

---

[77] https://healthcaresuccess.com/medical-marketing-advertising/facebook-fundamentals.html
[78] https://healthcaresuccess.com/blog/medical-marketing-advertising/facebook-fundamentals.html Stewart Gandolf, Chief Executive Officer at Healthcare Success - "Facebook is an Advertisers Platform".

[79] https://en.wikipedia.org/wiki/Facebook

"platform" which by agreement allows users in real-time and space to connect with other individuals digitally for social, family, friend, interests, and professional/business interactions. Yet, this follows years of data and image harvesting which was sold to third parties for profit via demographic categorizing, biometrics and otherwise. Same also follows Defendant Facebook purportedly "deleting" facial recognition data but not before unjustly enriching themselves utilizing same and failing to disclose who/where the data was transferred or stored prior to deleting. And how exactly it was used for the "metaverse" purposes which clearly has commercial purposes appropriations and likenesses

86.     Facebook, Inc. banning of the facial recognition is *per se* a remedial measure, but does not forego the claims for enrichment during the data harvesting period. Using the equivalent of users family photo album Defendants have tagged, sorted, historically geolocated and stored minors images, minors videos files and associates of minors that would as stored when hacked work like a Pandora's box, digital playbook for peda and the dark pornography industry and is simply otherwise a systematic privacy breach of minors. In 2019 there were nearly 17 million reported cases of online child sexual abuse material (CSAM), 94% of which stemmed from Facebook now Meta.[80]

87.     Plaintiffs were deceived as to the extent of permission granted in the data harvesting and minors' image farming practices of Defendants. The facial recognition template is the exemplar version of a fingerprint and Defendants knew the same when harvesting minors photographs without proper legal permission. The practice and concern was shared by Proxy Impact which is contracted regarding issues of "social justice".[81] In 2019, there were more than 16.8 million reports of online child sexual abuse material (CSAM) which contained 69.1 million CSAM related images and videos. More than 15.8 million reports–or 94% –stem from Facebook now Meta and its platforms, including Messenger and Instagram.[82]

88.     Reported incidents of child sexual exploitation have increased dramatically from year to year over the past decade from 100,000 CSAM incidents ten years ago to nearly 70 million incidents in 2019.[83] The exponential growth of CSAM is tied directly

[80] https://www.sec.gov/Archives/edgar/data/1326801/000121465920004962/s522201px14a6g.htm
[81] https://www.proxyimpact.com/about
[82] https://www.missingkids.org/gethelpnow/cybertipline#bythenumbers
[83] https://www.nytimes.com/interactive/2019/09/28/us/child-sex-abuse.html

to the growth of the internet and social media.[84] The link between child abuse and the internet is even more evident given the significant uptick in both social media use globally, pornography website visitations, and noticeable increases in child sex abuse searches by child predators on public search engines during the COVID pandemic.[85] [4] [5] [6]

89.    With 180 countries and their school systems sending children home to continue their education on Internet-connected devices, many kids are flocking to social media to connect with friends and strangers during social isolation, as parents struggle with juggling work or lack thereof and risks and stress from the pandemic, leaving many children unsupervised online. "Facebook is by far and away the world's largest source of online child sexual abuse materials. The company has been harshly criticized by governments, law enforcement and child protection organizations for its insufficient efforts to prevent or stop CSAM." Even, "Shareholders believe that the company needs to report on its assessment of the risk of increased sexual exploitation of children…" which stems from the troves of minors images and video files Defendants store.[86]


**COUNT ONE**
**UNJUST ENRICHMENT**
**ALL PLAINTIFFS AGAINST ALL DEFENDANTS**

90.    Plaintiffs privacy rights and other similarly situated minors images, minors moving pictures, video clips of minors, location information, friends network, legal name, dates of birth, phone numbers, facial recognition markers, facial recognition biometrics and other digital information of value without consideration and to the unjust enrichment of the Defendants. Defendants promised to "build a better community" and to provide "in exchange" a fair and equal access Social Media Platform and migration or platform-to-platform per the July 20, 2018 promise. This includes Defendants engaging in a form of corporate surveillance for profit in breach of privacy rights of Plaintiff

---

[84]

https://web.archive.org/web/20190928174029/https://storage.googleapis.com/pub-tools-public-publication-data/pdf/b6555a1018a750f39028005bfdb9f35eaee4b947.pdf
[85] https://www.scientificamerican.com/article/the-coronavirus-pandemic-puts-children-at-risk-of-online-sexual-exploitation/, https://static1.squarespace.com/static/5630f48de4b00a75476ecf0a/t/5ebc58d038eb072b909874ca/1589401809129/Impact+of+COVID-19+on+Online+Child+Sexual+Exploitation.pdf, https://www.hrw.org/news/2020/04/09/covid-19s-devastating-impact-children
[86] https://www.sec.gov/Archives/edgar/data/1326801/000121465920004962/s522201px14a6g.htm

minors and minors similarly situated as same harvested minors images, locations, associations and the like without proper legal permission. Minors did not have equal bargaining power and received no consideration. These images were commercially appropriated which is just one element of privacy laws that were breached to the unjust enrichment of Defendants.

91.    Defendants, however, have designed a platform and unjustly enriched themselves over years in anticompetitive practices. Defendant Facebook, Inc. now operating as "Meta" exclaims in its "Letter from the Founder" which is Defendant Zuckerberg: "The defining quality of the metaverse will be a feeling of presence — like you are right there with another person or in another place. Feeling truly present with another person is the ultimate dream of social technology."[87] Defendants have harvested the date/time/location markers, biometric markers for algoritmy conversion or storage and other general uses of images of minors to include Plaintiffs for profit.

92.    Defendants have commercially appropriated the likeness and images with facial recognition of Plaintiff minors and those similarly situated.[88]

93.    Plaintiff One (#01) Jennifer Catrice Hill on behalf of A.F. a ten (10) year old minor, Plaintiff Two (#02) Slade Miller on behalf of A.K.C.M. a six (6) year old minor, Plaintiff Three (#03) Wesley Bolton Garmon on behalf of L.C.G. a fifteen (15) year old minor, Plaintiff Five (#04) Wesley Bolton Garmon on behalf of L.K.G. a seventeen (17) year old minor, Plaintiff Five (#05) Sarah F. Bailey on behalf of J.F.B. (14) year old minor, Plaintiff Six (#06) Sarah F. Bailey on behalf of J.P.B. (13) year old minor, Plaintiff Seven (#07) Sarah F. Bailey on behalf of W.C.B. (10) year old minor, Plaintiff Eight (#08) Sarah F. Bailey on behalf of J.C.B. (6) year old minor, each assert photographs of the minors were harvested, biometric via facial recognition and otherwise unlawfully spied on for profit by Defendants directly or in conspiracy. Same were stored, transferred to and from or otherwise made vulnerable following the illegal harvesting and biometric application of facial recognition. The storage and transfers are

---

[87] https://about.fb.com/news/2021/10/founders-letter/
[88] See Schifano (holding that the use of a photograph of the plaintiffs sitting in a reserved section of a greyhound park in an advertising brochure for the park was not a commercial appropriation because there was "no unique quality or value in [the plaintiffs'] likenesses that would result in commercial profit to the [park] simply from using a photograph that included them - unidentified and seated in a group"), compared to the case at bar wherein commercial value was profited by Defendants; and Minnifield v. Ashcraft (reversing a grant of summary judgment for the owner of a tattoo parlor who submitted photographs of the plaintiff's tattoo to a magazine, along with his name and the name of his business, as it was reasonable to infer that the owner sought a commercial benefit).

alleged as separate and distinct acts which violate minors privacy rights. All commercial appropriations via algorithm or metaverse code building using images harvested of minors is consideration unjustly enriched to Defendants.

94.    Until August of 2015, Alabama did not recognise the right of publicity, although it did recognise a common law invasion of privacy tort for the unauthorized appropriation of personality, name, or likeness for the commercial use or benefit of a defendant. On May 18, 2015, Alabama's governor signed into law the Alabama Right of Publicity Act ('the Publicity Act'), located in Title 6, Chapter 5, Article 39 of the Code, which became effective on 1 August 2015.  Defendants have violated the rights of Plaintiff minors and those similarly situated to privacy and in doing so have created a right of publicity by using their appropriation and likeness for commercial use and benefit.  These images are stored in Huntsville, Alabama from where at some point the commercial use was initiated by file storage or transfer to a server of Defendants.  Under the Publicity Act, a person or entity who uses or causes the use of the indicia of identity of a person, on or in products, goods, merchandise, or services enter into commerce in this state, for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services, or for purposes of fund-raising or solicitation of donations, or for false endorsement, without consent shall be liable under this article to that person, or to a holder of that person's rights.

95.    This transition to "Meta" follows no less than four (4) years of minors' image harvesting, biometric marking and trafficking.  Defendant Meta claims: "The metaverse will not be created by one company. It will be built by creators and developers making new experiences and digital items that are interoperable and unlock a massively larger creative economy than the one constrained by today's platforms and their policies."[89]   While the claim appears to encourage competition by alleging "the metaverse will not be created by one company", it deceptively leaves out the fact that minors images, biometrics and identifying information was illegally used for profit and value.

96.    Defendant Meta goes on to claim: "Privacy and safety need to be built into the metaverse from day one." So do open standards and interoperability[90] This will

---

[89] *Id.*
[90] **Bold** emphasis added.

require not just novel technical work — like supporting crypto and NFT projects in the community — but also new forms of governance."

97. Defendant Meta also says: "Today we're seen as a social media company. Facebook is one of the most used technology products in the history of the world. It's an iconic social media brand." Defendant Facebook, Inc. now operating as Meta considers itself the "iconic" social media brand and fully intends to stay that way despite its "rebranding" as a virtual reality world, effectively creating a video game using images of minors and others without proper legal permission.

98. Defendant Zuckerberg says: "I used to study Classics, and the word 'meta' comes from the Greek word meaning 'beyond'. For me, it symbolizes that there is always more to build, and there is always a next chapter to the story." All the while, Defendant Facebook, Inc., now known as Meta, has intentionally designed and developed a social media platform which went "beyond" privacy rights of minors.

99. Tech blogger Wayne Geyser writes: "Ever since Facebook bought the image-sharing platform, Instagram, they have been coming up with new and better ways to integrate the two platforms."[91] It should be noted that Defendant Facebook, Inc. owns the social media platform "Instagram" and has jointly harvested images using biometrics scanned.

100. "The doctrine of unjust enrichment is an equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another."[92] Each and every dollar of revenue from the advertisers come from harvested data and minors' images of the users which were taken without the promised and due consideration.[93] Defendants did violate § 1 of the Sherman Act, which prohibits "contract[s], combination[s], or conspirac[ies] in restraint of trade or commerce" in unjustly enriching themselves.

101. Defendants' retention of profits and expending of the revenue earned from the digital harvesting of minors images and info without proper legal permission and those similarly situated, " means Defendants have unjustly enriched themselves as they have the retention of a benefit unjust obtained."[94] The retention of a benefit is unjust if

---

[91] https://influencermarketinghub.com/how-to-cross-post-to-instagram-from-a-facebook-page/
[92] Battles v. Atchison, 545 So. 2d 814, 815 (Ala.Civ.App.1989).
[93] Avis Rent A Car Sys., Inc. v. Heilman 876 So. 2d 1111, 1123 (Ala.2003)
[94] Welch v. Montgomery Eye Physicians, P.C., 891 So. 2d 837, 843 (Ala.2004) (quoting Jordan v. Mitchell, 705 So. 2d 453, 458 (Ala.Civ.App.1997)).

"(1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched."

102.   Each Defendant did conspire with the other in an ongoing profiteering scheme to "harvest data" at the users' expense and without due consideration per the terms of the agreement while engaging in anticompetitive and deceptive practices.  The most recent change of "rebranding" Defendant Facebook, Inc. to become or to do business as Meta Platforms is witness to the culmination of the conspiracy.  This same indicates very clearly that it has been and did become the "metadata" that Facebook, Inc. became primarily interested in over its years of evolution and has deceived users into giving up images. Each Defendant is guilty of unconscionable conduct to include fraud, coercion, duress, and conspiracy and did enrich themselves. The extent of success or failure of an unjust-enrichment claim[95] depends on the particular facts and circumstances of each case.[96]   Herein, the Plaintiffs were egregiously gorged on digital valuables to include minors images with biometrics and demographic categorization in violation of the Sherman Act, in violation of the terms & agreements with users and in violation of the torts laws herein referenced.

103.   It is known, understood, and appreciated that machines, such as that utilized in Facebook's "machine learning" algorithm, assist humans with details of fond and business value laden memories by storing and retrieving information or images from the past.   Each user understood this was an available feature and would remain available, hence uploading pictures of a birthday party or the opening of a new business while Facebook thereafter would modify the agreement and change the functionality of the platform, and otherwise restrict access.  Allowing Facebook to maintain that information without redress of transferring the same to a competitive social media platform would

---

[95] "In contrast, Montana courts require a showing of misconduct or fault on the part of the defendant to recover under an unjust enrichment theory. 'Unjust enrichment is an equitable doctrine wherein the plaintiff must show some element of misconduct or fault on the part of the defendant, or that the defendant somehow took advantage of the plaintiff.'" *Randolph v. Peterson, Inc. v. J.R. Simplot Co.*, 239 Mont. 1, 778 P.2d 879, 883 (Mont. 1989) (citing *Brown v. Thornton*, 150 Mont. 150, 432 P.2d 386, 390 (Mont. 1967)). In Alabama, "The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." Battles v. Atchison, 545 So. 2d 814, 815 (Ala.Civ.App.1989).
[96] Heilman, supra

and is unjustly enriching Defendants Facebook, Zuckerg, Starbelt, LLC, and now Meta Platform. Plaintiffs and those minors similarly situated plead unjust enrichment and appropriation of likeness for commercial gain.

WHEREFORE, Plaintiffs demand and pray for relief as hereinafter set forth.

## COUNT TWO
## ANTITRUST CLAIM PER SHERMAN ACT[97] and
## DECEPTIVE BUSINESS TRADE PRACTICES
## PLAINTIFF MINORS AGAINST ALL DEFENDANTS

104.    The Defendants by deceptive practices harvested and used minors likenesses, minors images, minors video images, to include the Plaintiffs without privacy consideration, as part of a data and image trafficking for profit practice and in reliance upon for creation of the metaverse via algorithm and computer generated software. Per privacy protections afforded to minors as constitutional minimums and the recent *Alston v. NCAA* case, each individual wherein commercialized purposes exist are entitled to the consideration of their likeness.[98] [99]   Defendants engaged in a form of corporate surveillance and harvesting for profit in breach of privacy rights of Plaintiff minors and minors similarly situated. Alabama courts have described an invasion of privacy as occurring when the defendant "intrudes upon a plaintiff's physical solitude or seclusion or wrongfully intrudes into private activities in a manner that would outrage, or cause mental suffering, shame, or humiliation to, a person of ordinary sensibilities."

105.    Plaintiff One (#01) Jennifer Catrice Hill on behalf of AF a ten (10) year old minor, Plaintiff Two (#02) Slade Miller on behalf of AKCM a six (6) year old minor, Plaintiff Three (#03) Wesley Bolton Garmon on behalf of LCG a fifteen (15) year old minor, Plaintiff Five (#04) Wesley Bolton Garmon on behalf of LKG a seventeen (17) year old minor, Plaintiff Five (#05) Sarah F. Bailey on behalf of J.F.B. (14) year old minor, Plaintiff Six (#06) Sarah F. Bailey on behalf of J.P.B. (13) year old minor, Plaintiff Seven (#07) Sarah F. Bailey on behalf of W.C.B. (10) year old minor, Plaintiff

---

[97] In LEEGIN CREATIVE LEATHER PRODUCTS, INC. *v.* PSKS, INC. (No. 06-480) 171 Fed. Appx 464.
[98] https://www.si.com/college/2021/03/30/ncaa-supreme-court-athlete-rights-name-image-likeness, https://www.cbssports.com/college-football/news/supreme-court-cracks-ncaas-amateurism-with-unanimous-decision-allowing-unlimited-benefits-tied-to-education/
[99] https://www.supremecourt.gov/opinions/20pdf/20-512_gfbh.pdf - Alston v. NCAA

Eight (#08) Sarah F. Bailey on behalf of J.C.B. (6) year old minor, each alleged photographs of the minors were harvested, biometric via facial recognition and otherwise unlawfully received as an upload while Defendants engaged in deceptive trade practices and otherwise violated the Sherman Antitrust Act to obtain the same. All similarly situated minors that will compose the class herein assert a claim for deceptive trade practices.

106. Plaintiff Bailey had a Facebook account which was established in 2008 and she has approximately one thousand seven hundred (1,700) "friends" on the Platform which has since been referred to as the Meta Platform. Plaintiff Sarah F. Bailey is a counselor who serves as a contractor for public schools to include at least seven (7) schools within the general Birmingham area over the preceding ten (10) years.

107. Plaintiff Bailey alleges the biometrics machine learning of minors and otherwise privacy breaches of her minor children and she has good faith reason to believe that minors in contract with the schools she serviced were biometrics using her account.

108. During her work with children she encourages parents to set goals and celebrates the relationships and success of her client minors. She has serviced client minors in schools in Hueytown, Alabama, Midfield, Alabama, and Irondale, Alabama, Birmingham, Alabama. While operating within the privacy laws and obtaining proper legal releases per school policy regarding the minors photos with her during her professional services photographs were taken. Those photographs were uploaded to the Platform with a reasonable expectation that the same would be not disseminated in a manner nor used to obtain biometric or demographic information of the minors in accordance with privacy expectations minors are afforded.

109. Defendants collectively scanned, harvested, utilized the photographs of minors, to include Plaintiff Bailey's children and minors she was in contract with via public and private school boards to provide professional counseling services for. Those photographs of minors were harvested in a for-profit, for-enrichment and otherwise alternative purpose to that which the Social Media was promising and were utilized via machine-learning technology and algorithmes to "spy", conduct "surveillance" or otherwise gather digital information and depictions of the minors in breach of privacy laws and while Defendants were in violation of the Sherman Antitrust Act.

110. Plaintiff Bailey is a mother of the four (4) minors, J.F.B., J.P.B., W.C.B. and JCB, which consist of the natural genders of three (3) boys and one (1) girl. Plaintiff Bailey has posted photographs with an expectation that the same would be afforded the privacy protections due. These photographs were posted onto the Platform for the years 2008 to recent. Plaintiff Sarah Bailey is a life coach and counselor and operates providing services to patient/client minors as "Coaching for Kids". She uses and used the Platform as a means of providing public communications to parents of her minor clients. She also posts notices regarding scheduling and encouraging, informative "memes". She shares Department of Education and other public awareness posts as well as photographs depicting her minor clients. and encouraging mental health and emotional wellbeing. Specifically: "At Coaching for Kids, our mission is to expose children to the principles of Emotional Intelligence, in a way that fosters intrinsic motivation, is character focused, and builds a sense of self-worth, empathy, and confidence with gratitude and humility."[100]

111. Plaintiff Bailey, using the Platform page, Coaching for Kids, has posted photographs from Midfield High School, McAdory School, Highlands School, Prince of Peace and other public and parochial schools.

112. Specifically on August 4, 2021 photographs were posted to the Platform by Plaintiff Bailey of Emotional Intelligence activities and lessons with minor students participating. These images were uploaded in good faith with an expectation that privacy laws were being honored by the Platform only to learn of the machine learned biometric facial recognition practices and otherwise minor image harvesting practice of Defendants.

113. On July 15, 2021 photographs of "MIND GROWN" Camp for minors were posted under the release terms with the school and uploaded to the Platform with an expectation of Defendants to respect the privacy rights of the minors depicted. But these pictures with thirty-four individual pictures of various minors within them were uploaded to the Platform. Defendants thereafter implemented facial recognition, location tracking, and image property storage of the minors depictions using machine learn application and algorithms in violation of privacy laws and following deceptive trade practices to harvest the same.

---

[100] https://www.facebook.com/coachingforkidsbirmingham/

114.    On June 17, 2021 at McAdory Middle School in compliance with the schools release policy Plaintiff Sarah Bailey uploaded photographs of minors onto the Platform as part of her contract services and promoting emotional intelligence and wellbeing of minors.  The pictures, containing approximately fifteen (15) student minors, were scanned, stored and otherwise harvested in a manner that is now understood to have breached those minors privacy rights and was done by deceiving Plaintiff Bailey into believing the Defendants were committed to the Platform's privacy promises while in fact biometric, location and other digital factor surveillance of minors was executed by Defendants.  All Plaintiffs and other minors similarly situated were sorted, stored, and biometric scanned by Defendants following deceptive practices.

115.    Mind Grown Summer Camp was held at Highlands School on June 14 - 18, 2021 for Grades 4th and 5th and on July 26 - 30, 2021 for grades 6th, 7th and 8th by Plaintiff Bailey.  These contract summer camps for the emotional well being were used by Defendants to digitally spy on minors and otherwise for the uploaded photographs seek to biometric of minors by the practices herein asserted.

116.    Plaintiff Bailey has uploaded in good faith and reliance upon the privacy laws, under release with the school, photographs on March 1, 2021 of Prince of Peace Catholic School in Hoover, Alabama which requires blurring of the minors faces.  Same was done by Plaintiff Bailey in compliance with that school's policy.  Yet the other schools policy do not provide that additional requirement and photographs of minors at those schools were uploaded and Plaintiff Bailey and minors have privacy expectations that should not require the blurring to prevent machine-learning algorithms from biometrics by facial scanning, tagging, location marking and or otherwise engaging in digital surveillance and spying upon minors.

117.    On August 24, 2020 the Plaintiff Sarah Bailey in good faith uploaded pictures from Highlands School of minors engaging in activities with Coaching for Kids.  Photos by release policy were posted and shared from Highlands School group page which depict a group virtual learning session and two (2) minors within the photograph who are virtual learning.  These photographs were subjected to the biometric facial recognition scanning, location logging, and association storage practices in violation of privacy rights by Defendants.  Same were obtained by deceptive trade practices of Defendants.

118. On January 15, 2020 photographs depicting two (2) minors were uploaded by Plaintiff Sarah Bailey which she alleges were subject to the privacy breaching practices and facially biometric scanned following her upload. This photo was taken at Highlands School whose Facebook group is "tagged" or associated in the post. These and all other posts depicting third-party minors Plaintiff Bailey herein makes a claim for wherein the same were biometric facial recognition scanned and otherwise subject to privacy violations. Same affected in practice other similarly situated minors who are due to be added to the class.

119. Plaintiff Bailey is concerned over the facial recognition and related biometric indicators which were harvested by Defendants related to her minor children and any other minor children depicted in a photograph uploaded to the Platform. Plaintiffs assert that "Facebook" illegally utilized the Platform and uploaded images and information of association each and every time a photograph of a minor was uploaded and Defendants received the same, facially recognized/tagged/templated a minor.

120. Plaintiffs allege per the various news outlet reports that data and privacy breaches have occurred which Defendants have a duty to notify the subjects whose information was compromised due to breaches. Plaintiffs allege the biometric application with storage on Defendants' servers was a privacy breach and done as a part of a deceptive trade practice of Defendants. Plaintiff Bailey, Plaintiffs and others similarly situated in good faith and with the assurances of the law provided Defendants with images of her minor children and minors in contract which are stored at Starbelt, LLC or one of the servers connected to that database hub which is located in Huntsville, Alabama. Plaintiff Bailey alleges transfer by Defendants of the images or related demographic information to third-parties, whether by breach or for sale, has occurred which depicts the minors on school grounds and her minor children. All Plaintiffs and those similarly situated minors in Alabama, the U.S. and reserved globally do allege the same.

121. Antitrust refers to the regulation of the concentration of economic power, particularly with regard to trusts and monopolies. Antitrust laws exist as both federal statutes and state statutes. The three key federal statutes in antitrust law are the Sherman Act, Section 1, the Sherman Act, Section 2, and the Clayton Act. The Sherman Act, Section 1 delineates and prohibits specific means of anticompetitive conduct, and Section 2 deals with end results that are anti-competitive in nature. Sections 1 and 2

supplement each other in an effort to outlaw all types of anticompetitive conduct. The Clayton Act regulates the mergers or acquisition of the companies together with the guidelines published by the Department of Justice and the Federal Trade Commission. As for the states, many have adopted antitrust statutes that parallel the Sherman Antitrust Act to prevent anticompetitive behavior within individual states. The Defendants did engage in "market division" by its demographic categorizing, minors biometric scanning, and were thus and were in breach of antitrust laws. Same conspired to and as set out herein did work to create a division of markets using minors images, minors videos and minors likeness to create digital dossiers and a metaverse video game.

122. Penalties for violating the Sherman Act can be both criminal and civil (most) enforcement actions are civil). Defendants did fix the value of the information, method, and data harvested across the platform and Digital Information Storage markets in violation of antitrust laws and, specifically, the Sherman Act while breaching privacy protections.

123. All the data and minor image harvesting were done as a means of monopolizing on profits in the informational age without rendering the due consideration and in breach of privacy rights of the minors. Defendants have now expanded their antitrust and anti competition tactics by rebranding as "Meta Platform" with the sole intention using the data and images harvested.

124. In the Sherman Act, Congress tasked courts with enforcing a policy of competition on the belief that open market forces "yield the best allocation" of the Nation's resources, but Defendants did exploit minors images and likeness in its insatiable pursuit of profits gain and market dominance in the virtual world and data/image harvesting industry. *Nat'l Collegiate Athletic Assn.* v. *Board of Regents of Univ. of Okla.*, 468 U. S. 85, 104, n. 27 (1984).

125. In Leegin Creative Leather Products, Inc. v. PSKS, Inc.[101], the Court confirmed antitrust litigation may be maintained where market fixing is occurring to include "vertical agreements". The accepted standard for testing whether a practice restrains trade in violation of §1 is the rule of reason, which requires the factfinder to weigh "all of the circumstances," Continental T. V., Inc. v. GTE Sylvania Inc.,433 U. S. 36 , including "specific information about the relevant business" and "the restraint's history, nature, and effect," State Oil Co. v. Khan, 522 U. S. 3. Plaintiffs claims involve a

---

[101]  (No. 06-480) 171 Fed. Appx 464.

conspiracy to create a cross-market agreement between Facebook, Inc. and Starbelt, LLC along with and at the direction of Defendant Zuckerberger to restrain competitive trade in the virtual reality gaming business by mass harvesting of minors images and image videos in an anticompetitive practice which sought to gain and did gain market advantage.

126. Defendants did violate §1 of the Sherman Act, which prohibits "contract[s], combination[s], or conspirac[ies] in restraint of trade or commerce" which Defendants did by conspiring.

127. The Sherman Act's prohibition on restraints of trade has long been understood to prohibit only restraints that are "undue."[102] Whether a particular restraint is undue "presumptively" turns on an application of a "rule of reason analysis." *Texaco, Inc. v. Dagher*, 547 U. S. 1, 5. That manner of analysis generally requires a court to "conduct a fact-specific assessment of market power and market structure" to assess a challenged restraint's "actual effect on competition." *American Express*, 585 U. S., at ___. Pp. 15–24. a party cannot declare a restraint "immune from § 1 scrutiny" by relabeling it a product feature. *Am. Needle, Inc. v. Nat'l Football League*, 560 U. S. 183, 199, n. 7.

128. The Defendants did engage in deceptive and predatory trade practices in violation of antitrust laws and the Sherman Act.[103] Similar to a paid subscription or utility contract the user gives consideration. This consideration is afforded based upon the expectations of the user as to the functioning of the platform interface and after the terms and agreements are accepted time, friend association, and the digital images and information are provided by the user.

---

[102] *Ohio v. American Express Co.*, 585 U. S. 345 (2018)

[103] In WEYERHAEUSER CO. v. ROSS-SIMMONS HARDWOODLUMBER CO. (No. 05-381) 411 F. 3d 1030 the Court held that predatory schemes whether to manipulate price or value are antitrust law violations. Specifically, "Predatory pricing is a scheme in which the predator reduces the sale price of its product hoping to drive competitors out of business and, once competition has been vanquished, raises prices to a supracompetitive level. *Brooke Group* established two prerequisites to recovery on a predatory-pricing claim: First, a plaintiff must show that the prices complained of are below cost, 509 U. S., at 222, because allowing recovery for above-cost price cutting could chill conduct—price cutting—that directly benefits consumers. Second, a plaintiff must show that the alleged predator had "a dangerous probability of recouping its investment in below-cost pricing," *id.*, at 224, because without such a probability, it is highly unlikely that a firm would engage in predatory pricing. The costs of erroneous findings of predatory-pricing liability are quite high because " '[t]he mechanism by which a firm engages in predatory pricing—lowering prices—is the same mechanism by which a firm stimulates competition,' " and therefore, mistaken liability findings would " ' "chill the very conduct the antitrust laws are designed to protect." ' " *Id.*, at 26. Pp. 4–7."

129. The Defendants did engage in deceptive and predatory trade practices given "Editorial Images" of minors is generally accepted yet the practice of facial recognition scanning, templating a minor, sorting and storing ones images is not when considering the means and mode of machine learn scans and biometric markings. Harvested images of minors following scans include photographs of minors they do not even know exist which were tagged and or templated and stored by Defendants. Same includes even photographs the minor may later discern as inappropriate for legal reasons, be adversely affected by associations that are privacy protected, and yet have had the image scanned tagged, disseminated and stored by Defendants.[104]  There are also minors similarly situated who have this future risk created with the reality of the harvested images.

130. Defendants, in breach of the antitrust laws, have leveraged this information while breaching minors privacy rights. Thus, Defendants did code and categorize minor users and other minors similarly situated, to include by race and gender, using its machine learn technology and profited off the same. Defendants and third-parties retain in perpetuity the information obtained and images harvested for profits and value added to the metaverse. When analyzing an antitrust case involving predatory practices, the Court must consider a two (2) prong test.[105]  Defendants unfairly used these images to propel themselves ahead in the virtual reality gaming industry and the same was done in violation of Sherman.

131. Plaintiffs and those similarly situated asserted Sherman Antitrust violations to include deceptive trade practices by Defendants.

---

[104]

https://www.lawyers.com/legal-info/family-law/child-abuse-and-neglect/baby-pictures-or-child-pornography.html
According to Janet Portman, Esquire - "Creating, distributing, and possessing child pornography is illegal under federal and state laws. However, not all images of nude children amount to child pornography, because images of naked children, *without more*, are protected under the First Amendment (as a form of freedom of speech). For example, a family photo of a child in the bathtub presumably would not be illegal. But, what about that "without more?" There's the issue: the context of the photo can turn it from an innocuous snapshot into a piece of child pornography."

[105] In WEYERHAEUSER CO. v. ROSS-SIMMONS HARDWOODLUMBER CO. (No. 05-381) 411 F. 3d 1030 the Court confirmed, the *Brooke Group*'s two-pronged test should apply to predatory-bidding claims. A predatory-bidding plaintiff must prove that the predator's bidding on the buy side caused the cost of the relevant output to rise above the revenues generated in the sale of those outputs. Because the risk of chilling procompetitive behavior with too lax a liability standard is as serious here as it was in *Brooke Group,* only higher bidding that leads to below-cost pricing in the relevant output market will suffice as a basis for predatory-bidding liability. A predatory-bidding plaintiff also must prove that the defendant has a dangerous probability of recouping the losses incurred in bidding up input prices through the exercise of monopsony power. Making such a showing will require "a close analysis of both the scheme alleged by the plaintiff and the [relevant market's] structure and conditions," 509 U. S., at 226. Pp. 12–13.

**COUNT THREE**
**FRAUDULENT SUPPRESSION AGAINST**
**DEFENDANTS FACEBOOK/META**

132.   Defendants fraudulently suppressed the spying on minors' practice.   The Plaintiffs and those similarly situated have provided significant consideration of images and data which is indisputably utilized by Defendants to profit between nine ($9) dollars up to one hundred and ten ($110) dollars on average per year per user/account.   The digital information afforded was given up by Plaintiffs and other similarly situated users in exchange for fair and reasonable access to the platform.   Yet Defendants were systematically gathering images of minors with machine-learn surveillance technology. These images were obtained by fraudulent suppression and commercially appropriated by Defendants.

133.   Deep fakes—videos or audio that "use artificial intelligence to make someone appear to do or say something they didn't—could evolve to become even more realistic and interactive in a metaverse world."[106] Every image stored by Defendants that was subject to biometric facial recognition and otherwise stored with information in beach of the minor's privacy rights are at per se risk of use for deep fake, or otherwise were saved in breach of privacy rights.

134.   Plaintiff One (#01) Jennifer Catrice Hill on behalf of AF a ten (10) year old minor, Plaintiff Two (#02) Slade Miller on behalf of AKCM a six (6) year old minor, Plaintiff Three (#03) Wesley Bolton Garmon on behalf of LCG a fifteen (15) year old minor, Plaintiff Five (#04) Wesley Bolton Garmon on behalf of LKG a seventeen (17) year old minor, Plaintiff Five (#05) Sarah F. Bailey on behalf of J.F.B. (14) year old minor, Plaintiff Six (#06) Sarah F. Bailey on behalf of J.P.B. (13) year old minor, Plaintiff Seven (#07) Sarah F. Bailey on behalf of W.C.B. (10) year old minor, Plaintiff Eight (#08) Sarah F. Bailey on behalf of J.C.B. (6) year old minor, each allege photographs of the minors were obtained by fraudulent suppression as to the practices

---

[106]

https://www.bloomberg.com/news/articles/2021-12-15/misinformation-has-already-made-its-way-to-facebook-s-metaverse

engaged in by Defendants that breached minors privacy rights. Same includes the biometric machine-learn via facial recognition surveillance and spying feature which resulted in harvested troves of minors photos and those similarly situated. Defendants did unlawfully, via deceptive trade practices regarding the extent of their use, receive uploaded photos of the minors and others similarly situated. Defendants engaged in deceptive trade practices and otherwise violated the Sherman Antitrust Act to obtain the same.

135. Facebook now Meta expanded its use of facial recognition technology[107] and Facebook did this scanning without permission. It is believed all scanning from November of 2017 up and until November 2, 2021, and all the images of minors harvested were used for profit and obtained by fraudulent suppression of the extent of practices being utilized and legalities.

136. This harvesting method and biometrics of minors practice went on purportedly until November 2, 2021 when Facebook and Meta announced it was no longer going to utilize this feature and would be deleting facial recognition scans. The same follows, however, utilizing the facial scans for profit and transferring this information to third parties as part of the fraudulent antitrust and unjust enrichment profit scheme.

137. "Companies including Apple Inc., Microsoft Corp. and Facebook parent Meta Platforms Inc. are racing to build out the metaverse, an immersive digital world that evangelists say will eventually replace some in-person interactions. The technology is in its infancy, but industry watchers are raising alarms about whether the nightmarish content moderation challenges already plaguing social media could be even worse in these new virtual- and augmented reality-powered worlds."[108] Meta knew the "content moderation challenges" as it was harvesting minors images and fraudulently suppressed their privacy breaching practices.

138. Defendants have gorged themselves of billions of dollars of profits from data and images harvested which Plaintiffs and others similarly situated provided while

---

[107] "Facebook Just Pushed Its Facial Recognition Into a Creepy New Future". *sciencealert.com*. Retrieved April 3,2018.

[108] https://www.bloomberg.com/news/articles/2021-12-15/misinformation-has-already-made-its-way-to-facebook-s-metaverse

believing that they would be provided fair treatment and equal protections. The conspiracy was and is an ongoing calculated conspiracy to harvest photo files, biometrics and data for the Defendants without consideration to the Plaintiffs and other similarly situated users.

139.   Defendants Facebook, Inc., Starbelt, LLC, and Zuckerberg have conspired and are conspiring to keep from the users the extent of inner working algorithms which were designed to harvest as much data and many minors images and video files as possible for advertising sales revenue, long-term use via storage, sale on the open market to third parties and at some level incorporation into the metaverse.  There are 1.84 billion daily Facebook users. [109]

140.   Defendants Facebook Inc, Starbelt, LLC, and Zuckerberg did conspire with Meta Platforms to transfer all ownership of the digital images and digital information at issue to the new company, Meta Platforms,  or under the operations of the new platform as part of its fraudulent conspiracy and fraudulent suppression.  Defendant Meta Platforms is manifesting the intentions of the other Defendants from years of evolution and operations within the fraudulent conspiracy as the name itself illustrates the intent - "data harvesting" or more clearly stated "metadata harvesting" for profit and metaverse appropriation.

141.   Tracking, data and minor image harvesting for profit was not part of the original agreement, and this practice with its profit interests were not disclosed in good faith and were fraudulently suppressed.  Facebook now Meta expanded its use "of facial recognition technology by introducing new tool that would alert people that a friend, or a friend of a friend, uploaded a photo of them, even if they haven't been tagged in the picture simply as a byproduct of having the facial recognition scans already encoded into the algorithm for image and data harvesting."[110]   Facebook did this scanning of minors images without proper legal permission and in disregard to privacy protections afforded to minors from at least November 1, of 2017 up and until November 2, 2021.

142.   This harvesting method went on purportedly until November 2, 2021 when Facebook and Meta announced it was no longer going to utilize this feature and would be deleting facial recognition scans.  The same follows, however, that utilizing the facial

---

[109] https://99firms.com/blog/facebook-statistics/
[110]   "Facebook Just Pushed Its Facial Recognition Into a Creepy New Future". *sciencealert.com*. Retrieved April 3,2018.

scans for profit and transferring this information to third parties as part of the fraudulent suppression practices.

143.  The fraudulently suppressed expansion to facial scanning recognition was for profitous purposes and otherwise was not entirely shared with users.  The additional level of harvesting by facial scanning was announced on December 19, 2017 and included amateur, personal, professional and family images.  These were harvested for value and the extent of harvesting and sales to third parties was fraudulently suppressed.

## DAMAGES - GENERAL & SPECIFIC

The Plaintiffs, herein plead damages as follows:

Injunctive relief should be entered compelling the Defendants (a) identify to Plaintiffs, at cost to the Defendants, any and all templates, biometrics, facial recognition files, dossiers and otherwise minor's digital identity files which have been harvested, stored and or trafficked.  This includes themselves and those minors similarly situated.

The State Class Plaintiffs Claimant User numbered seven (7) through Claimant User two million one hundred sixty-four thousand seven hundred forty (2,164,740)[111] represent those individuals who are similarly situated being Facebook users in the proposed class whose images, digital identity, personal information, and friends "network" was utilized in violation of antitrust laws[112] by Defendant Facebook, Inc. to earn on average up to one hundred ten dollars ($110.00) annually without due consideration and to the Defendants' unjust enrichment.  These State of Alabama Class Claimants do thus state and reserve damages for the four (4) preceding years per the Statute of Limitations for the Sherman Act.

The proposed National Class of Plaintiff Claimant Users does include any user in the United States of America and thus within Federal Court Jurisdiction, to include up to

---

[111] https://www.internetworldstats.com/unitedstates.htm#AL
[112] Including Facebook Paper's "Blacklist" pattern.

Two Hundred Eighty Million Four Hundred Sixty Thousand Six Hundred Sixty-Seven (285,460,667) are those individuals within the United States of America who are similarly situated being Facebook users in the proposed national class who experienced antitrust violations as set out herein. This is filed on behalf of each parent and minor similarly situated who whether by direct account were affected as set out herein or whose images along with other information was harvested, scanned, stored and trafficked without an individual account but by and through the account of another user.

Damages were real and true in time and are quantifiable annually and are pled up to and including the full statute of limitations of four (4) years to which includes per year revenue generated of $238,121,400 for the Alabama Class and $31,400,673,370 for the National Class. Total estimated revenue for all Facebook Users over the four (4) years preceding should be considered and is reserved for damage claims.[113]

This considers the minimal amount earned per year in violation of the antitrust laws per user and the maximum number of potential class participants. Ranges as stated herein are nine ($9) dollars up to and including one-hundred ten dollars ($110)[114] and perhaps up to two hundred two dollars ($202) per user of annual revenue earned by Facebook, Inc. The damages awarded should be calculated and be distributed to the Class Plaintiffs by way of a Court Ordered Matrix assigned by a point system element taking into consideration the legal counts set out herein and damages by category.

WHEREFORE, damages for the Plaintiffs are claimed herein and for the Alabama State Class of Two Hundred Forty Million Dollars ($240,000,000) and Thirty-One Billion Dollars for the National Class ($32,000,000,000) per year.

❖ Unjust Enrichment,

---

[113] https://www.statista.com/statistics/277229/facebooks-annual-revenue-and-net-income/ - "Facebook's revenue grew from 7.87 billion in 2013 to 86 billion US dollars in 2020."

[114] For §4 of the Clayton Act treble damages, this "good faith" damage of one hundred ten dollars ($110) per similarly situated class member is a plumb line for reserving damages. The amounts are based upon total Facebook/Meta users and the revenue per user generated. .

- ❖ Mental Anguish,
- ❖ Emotional Distress,
- ❖ Unjust Enrichment Damages of the Use of Minors Images, Likeness and Digital Identity to include race, gender, association and other constitutionally protected privacy regards without Consideration,
- ❖ Antitrust and Sherman Act damages to include treble damages per §4 of the Clayton Act are herein pled,
- ❖ Any general and specific damages for mental anguish, distress, punitive or like legal damage.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment against Defendants for the breaches herein pled. Plaintiffs for themselves and for the Alabama State Class and National Class do demand judgment against Defendants for general and compensatory damages that the court may determine.

WHEREFORE, relief and redress is requested as follows:

I.   Certifying this case as a Class Action on behalf of the Class defined above, appointing Plaintiffs as representatives of the Class, and appointing their counsel as Class Counsel; That a National Class be certified, or in the alternative a State Class be certified, with order entered directing Defendants, specifically Facebook, Inc., now operating as Meta Platforms, provide the Class Representatives the (i) full name, (ii) registered email address, and (iii) any other contact & demographic information necessary to alert those similarly situated of his/her potential claim as part of the Class of minors. Global Class is reserved for amendment consideration following discovery.

II.  Declaring that Facebook's actions, as set out above, violates the the Sherman & Clayton Antitrust Acts, *et seq*. and allow claims within the full four (4) year statute of limitations;

III. Awarding statutory treble damages of three-hundred thirty dollars ($330) per intentional or reckless violation of the Sherman & Clayton Antitrust pursuant to §4 and damages for the torts to include unjust enrichment of Defendants;

IV.     Direct a Minor's Privacy Trust Fund be established and each minor who has photographs stored on Defendants systems which were harvested, biometric facial recognition templated and trafficked to third-parties as part of the deceptive trade practices be a beneficiary of same. The general population is composed of 22.3% of minors 18 and under.[115]  Considering the Sherman statute and the claims noticed, the creation and funding of a Minors Digital Image Protection & Exploitation Mitigation Trust Fund is demanded to be funded each year for four (4) consecutive years for the minors and those similarly situated in the class. California[116] and Illinois[117] claims to be considered for a *pro tanto* reduction if other terms accepted.

V.     Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

VI.    Awarding Plaintiffs and the Class pre-judgment and post-judgment interest, to the extent allowable; and

VII.   Awarding such other and further relief as equity and justice may require.

Plaintiffs request that the jury award an amount which will adequately reflect the egregious nature of the Defendants' wrongful acts, general disregards, and which will effectively deter and at some level prevent other similar wrongful acts. Rights are herein reserved to amend the damage claim.

Respectfully submitted this the 31st day of December 2021.

---

[115] https://www.census.gov/quickfacts/fact/table/US/AGE295219
[116] Carlo Licata, et al v. Facebook, Inc. filed in California in the United States District Court, hence *res judicata* may be argued as an established case's resolution based upon the same legal theory and type of legal count(s).
[117] Frederick Gullen v. Facebook, Inc. filed in Illinois in the United States District Court, hence *res judicata* may be argued as established by this case's resolution based upon the same legal theory and type of legal count(s).

**//S// Trenton Garmon (GAR093)**
**Attorney for Plaintiffs**
**2024 Third Avenue North**
**Birmingham, Alabama 35203**
**Direct: 205-753-3998**
**Office: 855-998-7368**
**Facsimile: 855-998-3329**
**Email: trentongarmon@gfile.legal**

**//S// Erica Kemmer**
**Attorney for Plaintiffs**
**PO Box 592**
**Moundville, AL 35474-0592**
**Email: ericakkemmer@gmail.com**

**Of Counsel:**
**Garmon & Associates, PLLC**

### §1983 Pleading Notarized Oath & Verification

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

*s/ Trenton Garmon*
**Trenton Garmon**
Attorney for Plaintiffs

### REQUEST FOR SERVICE BY CERTIFIED MAIL

Pursuant to ARCP 4.1 and 4.2, Plaintiffs request that the Clerk direct service of the foregoing "Summons and Complaint" by certified mail, addressed as follows:

CLASS ACTION COMPLAINT

**Meta Platform, Inc.**
**1 Hacker Way**
**Menlo Park, California 94025**

**Mark Zuckerberg**
**1601 Willow Road**
**Menlo Park California 94025-1452**

**Starbelt LLC**
**Corporation Service Company Inc.**
**641 South Lawrence Street**
**Montgomery, AL 36104**

**<u>//S//Trenton Garmon</u>**
**TRENTON GARMON (GAR093)**

